CELESTINA ABARCA SANFELIZ VDA. DE GUMERSINDO SUÁREZ, demandante, apelante y apelada, *v.* BANK OF NOVA SCOTIA, demandado, apelado y apelante.

No. 5848.—*Sometido:* Diciembre 23, 1932. *Resuelto:* Junio 19, 1934.

932

*F. Soto Gras* y *R. Díaz Collazo,* abogados de la apelante y apelada; *J. Henri Brown, C. Ruiz Nazario* y *G. E. González,* abogados del apelado apelante.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Enrique Abarca Sanfeliz, en su carácter de apoderado de Celestina Abarca Sanfeliz, inició una acción en cobro de dinero contra el demandado Bank of Nova Scotia. Se alegó en la demanda que doña Celestina Abarca Sanfeliz, viuda de Gumersindo Suárez, es dueña de una casa que ella y su esposo dieron en arrendamiento al Bank of Nova Scotia en 22 de octubre de 1918 por un término de seis años, con opción a prorrogarlo por cinco años más, y por un canon mensual de $275, pagadero por semestres anticipados; que vencido el término original de seis años el demandado utilizó la opción a prorrogarlo por cinco años, y que el término adicional expiró en 22 de octubre de 1929; que por el apartado *C* de la cláusula tercera del ameritado contrato de arrendamiento fué expresamente convenido "que cualquier aumento en las contribuciones que hoy paga dicho edificio será de cuenta del arrendatario y asimismo todas las deducciones de la contribución actual que se hagan al citado inmueble serán en beneficio del arrendatario;" que durante la vigencia del repetido contrato de arrendamiento el inmueble objeto del mismo pagó al Tesorero Insular por concepto de contribuciones desde el año 1918 hasta el año 1929–30 la cantidad de $3,393.60; que de esta suma el demandado ha satisfecho la cantidad de $301.54, adeudando, por tanto, en la actualidad la suma de $3,092.06; que el demandado ha sido requerido en varias ocasiones para que satisfaga la ameritada cantidad y no la ha satisfecho ni en todo ni en parte.

El demandado formuló excepción previa alegando que de la faz de la demanda no aparecía que Enrique Abarca Sanfeliz tuviera causa de acción alguna contra él, y que la parte realmente interesada e indispensable era Celestina Abarca Sanfeliz viuda de Gumersindo Suárez, que no aparecía como

demandante en el pleito. La Corte de Distrito de San Juan sostuvo, resolviendo la excepción previa, que la persona realmente interesada era Celestina Abarca Sanfeliz, y que a su nombre debió ejercitarse la acción por no estar comprendido el caso en las excepciones establecidas por el Código de Enjuiciamiento Civil. Se concedieron diez días al demandante para enmendar la demanda. Se radicó una demanda enmendada en la cual aparece Celestina Abarca Sanfeliz viuda de Gumersindo Suárez ejercitando la acción a su nombre. El demandado pidió la eliminación de toda la demanda enmendada. Entonces Celestina Abarca Sanfeliz pidió permiso a la corte para enmendar y alegó, en apoyo de su solicitud, que de la faz de las alegaciones originales no surgía que Enrique Abarca Sanfeliz ejercitara acción alguna propia o que figurara por su propio derecho como demandante, y que la única razón por la cual el referido Enrique Abarca hizo figurar su nombre como representante de Celestina Abarca es porque le tiene otorgado un poder en el cual le confiere la facultad siguiente: ·

"Y para que la represente en toda clase de juicios civiles y criminales, de faltas, en actos de jurisdicción voluntaria, en expedientes y juicios gubernativos, administrativos y contencioso-administrativos con atribuciones para sostener demandas, denuncias y querellas, desistir de las mismas, contestar a las promovidas en contrario o bien allanarlas, ratificarse, tachar, recusar, transigir las cuestiones litigiosas, entablar todos los recursos procedentes en derecho incluso el de casación, y separarse de los mismos; nombrar peritos, asistir a juntas y conferir poder a procuradores con las atribuciones de esta cláusula y las demás propias del ejercicio del cargo consignadas en las leyes de enjuiciar de la Isla de Puerto Rico.''

La corte inferior autorizó la enmienda solicitada y ordenó que la demanda enmendada, que había sido radicada, continuara formando parte de los autos. El demandado reprodujo su excepción previa, la cual fué desestimada. Contestada la demanda y celebrado en su día el juicio correspondiente, la corte inferior dictó sentencia concediendo algunas

de las reclamaciones de la demandante y rehusando otras por razón de la prescripción. Ambas partes apelaron.

La demandada apelante atribuye a la corte inferior diez errores. Los tres primeros, que pueden discutirse conjuntamente porque abarcan la misma cuestión, dicen así:

"1. La Corte de Distrito de San Juan en su resolución de fecha 27 de enero de 1930, declarando con lugar las excepciones previas a la demanda original, erró en cuanto al pronunciamiento concediendo al entonces demandante Enrique Abarca Sanfeliz permiso para presentar una demanda enmendada.

"2. La Corte de Distrito de San Juan erró al dictar su resolución de fecha 30 de junio de 1930, declarando sin lugar la moción de la demandada solicitando se eliminara la supuesta demanda enmendada de Celestina Abarca Sanfeliz.

"3. La Corte de Distrito de San Juan, en su resolución de fecha 30 de junio de 1930, erró al admitir la supuesta demanda enmendada de Celestina Abarca Sanfeliz; al declarar con lugar su moción para que se le permitiera enmendar la demanda original de Enrique Abarca, y al desestimar la oposición de esta demandada."

■ Arguye la demandada apelante que la demanda no era susceptible de enmienda, y cita en su apoyo el caso de *J. Ochoa & Hno.* v. *González Clemente & Co.*, 29 D.P.R. 1015. Fué éste un pleito iniciado en Mayagüez por J. Ochoa & Hno. en su carácter de agentes generales en Puerto Rico de Morris & Co. La demandada formuló excepción previa que la corte declaró con lugar por falta de causa de acción en J. Ochoa & Hno. Se sostuvo "que la demanda fué establecida bajo la responsabilidad del demandante descrito en ella y no de ninguna otra persona, que el artículo 51 del Código de Enjuiciamiento Civil prescribe que toda acción debe establecerse a nombre de la persona realmente interesada; que cuando hay un solo demandante difícilmente podría ser oído para expresar que había un defecto de partes cuando aparecía que la causa de acción alegada había sido establecida por una persona que no tenía derecho a ella y que siendo tal firma demandante equivocada la única persona ante la corte, no tenía derecho a solicitar que alguna otra persona le sus-

tituyera." "Podríamos agregar aquí", continúa diciendo la corte, "que en ninguna parte del procedimiento aparece que Morris & Co. estén solicitando nada o que hayan autorizado a alguna persona a comparecer por ellos, sino que es siempre J. Ochoa & Hno. quien comparece."

La opinión de la corte termina como sigue:

"Convenimos, sin embargo, con la corte inferior en que la demanda no era susceptible de enmienda, y, además, aun suponiendo que haya algún medio de poder sustituir a los principales por los agentes, aun así, deben ser los principales quienes, bajo su propia responsabilidad, comparezcan ante la corte y hagan suya esta causa de acción."

Las palabras de la corte demuestran que en el caso citado se resolvió que la firma que inició la acción en su carácter de mandataria "no tenía derecho a solicitar que alguna otra persona la sustituyera"; pero no se decidió que el demandante, siendo la parte realmente interesada, no pudiese pedir permiso para continuar ejercitando la acción a su propio nombre. Es verdad que la corte en su opinión nos dice que la demanda no era susceptible de enmienda, pero como fué únicamente el mandatario quien solicitó permiso para enmendar, debe entenderse que lo que allí se declaró fué que la demanda no podía ser enmendada en la forma indicada a petición del referido mandatario. Que éste fué el criterio de la corte lo demuestran sus palabras cuando dice que en ninguna parte del procedimiento aparece que Morris & Co. estén solicitando nada o hayan autorizado a alguna persona a comparecer por ellos, sino que es siempre J. Ochoa & Hno. quien comparece, y cuando más adelante añade que aun suponiendo que haya algún medio de poder sustituir a los principales por los agentes, deben ser éstos quienes bajo su responsabilidad comparezcan ante la corte y hagan suya esta causa de acción.

Esto es lo que se ha hecho en el presente caso. Celestina Abarca, que es la parte realmente interesada, compareció ante la corte inferior solicitando permiso para que la acción

continuara a su propio nombre, eliminando de la demanda el nombre de su mandatario.

A nuestro juicio se trata de un mero tecnicismo que puede ser corregido mediante enmienda.

En el caso de *Fay* v. *Walsh,* 190 Mass. 374, se promovió una acción en cobro de una suma de dinero, valor de una madera vendida por el demandante a los demandados Walsh, Howard y Fletcher conjuntamente. La demanda fué iniciada por William A. Fay contra los referidos demandados. Al declarar como testigo, el demandante expuso que las cuentas aparecían encabezadas con el nombre de James Fairfield y que en ellas había impresas estas palabras: "William A. Fay, Agente." Declaró además que al tiempo de la venta de la madera en cuestión, él estaba actuando como mandatario de James Fairfield. Los demandados alegaron que la acción debió haber sido promovida en el nombre de Fairfield y que por esta razón debió habérseles concedido un veredicto a su favor. Resolviendo esta cuestión la Corte Suprema de Massachusetts se expresó así:

"Es claro que la acción debió haber sido promovida en el nombre de Fairfield, y que así ha debido decidirse.

"Esta objeción, por lo que aparece, es puramente técnica. Es una que pudo haber sido corregida mediante enmienda si se le hubiese llamado la atención al juez. Si los demandados le hubieran dicho al juez que la razón por la cual ellos pedían un veredicto como cuestión de derecho era que la acción había sido promovida equivocadamente por el mandatario, el juez pudo haber permitido discrecionalmente una enmienda sustituyendo a Fay por Fairfield. Costelo v. Crowell, 134 Mass. 280. Aun más, tal enmienda puede permitirse ahora después del veredicto."

En el caso de *Adams* v. *Edwards,* 8 Atl. 425, resuelto por la Corte Suprema de Pennsylvania, la acción fué promovida por un mandatario. Dicha corte resuelve este asunto en dos palabras:

"Fué una equivocación comenzar esta demanda en el nombre del mandatario; pero fué un error técnico, enmendable en la corte inferior, y aquí, si fuese necesario."

En el caso de *Boudreau* v. *Eastman,* 59 N. H. 467, se resolvió que en una demanda iniciada por un mandatario de un mandante desconocido, podía autorizarse una enmienda sustituyendo al agente por el principal, aun después del juicio, si no se variaba el resultado. 37 American Digest, 2490.

En el caso de *Hubler* v. *Pullen,* 68 Am. Dec. 621, los demandados alegaron que los demandantes no eran las partes realmente interesadas. La corte, con la oposición de dichos demandados, permitió que la demanda fuese enmendada sustituyendo los nombres de Richard B. Pullen y Thomas S. Brown por aquellos de Robert Pullen y Joseph S. Pullen, siendo estos dos últimos las partes a cuyo nombre se instituyó originalmente la acción. La Corte Suprema de Indiana, resolviendo la cuestión planteada, se expresó así:

"El Código dice: 'La corte puede en cualquier tiempo dentro de su discreción, y en los términos que fuesen adecuados, en bien de la justicia, ordenar que el nombre de una parte sea añadido o eliminado o que una equivocación en el nombre sea corregida; . . . cuando las enmiendas no cambian sustancialmente la reclamación o defensa.' Esta disposición evidentemente cubre la enmienda bajo nuestra consideración. La corte, al conceder dicha enmienda, parece haber actuado en bien de la justicia y no en perjuicio de los derechos del demandante."

El artículo 140 de nuestro Código de Enjuiciamiento Civil dice que podrá la corte, en bien de la justicia y en los términos que fuesen adecuados, permitir a una de las partes enmendar cualquier alegación o procedimiento, añadiendo o eliminando el nombre de alguna parte o corrigiendo un error en el nombre de la misma o en cualquier otro particular. Prácticamente el código nuestro en este particular es igual al código de Indiana. No vamos tan lejos, sin embargo, como el Tribunal Supremo de dicho estado. Nos limitamos a sostener que en el presente caso, en que Celestina Abarca es la parte realmente interesada y en que la demanda fué iniciada por su mandatario, procede conceder una enmienda para que la verdadera parte pueda continuar el pleito a su

nombre. La admisión de esta enmienda no modifica en lo más mínimo la causa de acción; las alegaciones de la demanda no han sufrido otra alteración que la eliminación del nombre de Enrique Abarca Sanfeliz. Se trata de un mero tecnicismo que debe corregirse en bien de la justicia. Los tribunales generalmente ejercitan sus facultades discrecionales, concediendo enmiendas de esta naturaleza, que no ocasionan perjuicio alguno al demandado y que no cambian la causa de acción. Los errores atribuídos a la corte inferior deben ser desestimados.

 El cuarto error se basa en que la corte declaró sin lugar las excepciones previas formuladas a la demanda enmendada. Se arguye que en 22 de octubre de 1918, cuando se celebró el contrato de arrendamiento, doña Celestina Abarca Sanfeliz estaba casada con don Gumersindo Suárez y que habiendo intervenido ambos en dicho contrato, la casa objeto del mismo pertenecía a la sociedad de gananciales. Doña Celestina Abarca viuda de Gumersindo Suárez alega que es dueña de la referida casa. Esta alegación ha podido ser más amplia, pero si alguna deficiencia hubo al no aclarar que dicha finca le fué adjudicada después de la muerte de su esposo, esa deficiencia quedó subsanada por la prueba. La demandante ofreció en evidencia una escritura notarial sobre partición y protocolización de operaciones particionales en cuanto a la adjudicación de la referida finca a la demandante. Entonces la demandada admitió el hecho primero de la demanda, es decir, que doña Celestina Abarca es dueña de la casa en cuestión. Debe desestimarse el error apuntado.

 Los errores quinto y sexto atribuídos a la corte inferior se basan en haber declarado sin lugar las defensas de *estoppel* y *laches* (demora), establecidas por la parte demandada. El demandado resume las razones que a su juicio justifican la aplicación de la teoría de *estoppel* en este caso del modo siguiente:

"La conducta de la demandante, a través de sus apoderados Sres. León y Abarca, quienes teniendo conocimiento de que la subarrenda-

taria Sobrinos de Ezquiaga era la que pagaba por The Bank of Nova Scotia, los cánones de arrendamiento, sus intereses, los aumentos en la contribución y todas las cantidades a ser desembolsadas de acuerdo con el contrato, dejaron, desde 1922 hasta octubre 4 de 1929, de notificar y cobrar aumento alguno en tales contribuciones, induciendo a The Bank of Nova Scotia a creer que las contribuciones no habían aumentado ni disminuído durante todo ese período y a actuar de conformidad con tal creencia, no .cobrando a Sobrinos de Ezquiaga cantidad alguna por tal concepto hasta octubre 4 de 1929 en que esta última ya estaba en liquidación y dejó de existir, para perjuicio de la demandada que no podía ya cobrar tal aumento a dicha subarrendataria, impide (*estops*) a la demandante reclamar el aumento de contribuciones durante dicho período y negar que los hechos fueron distintos a como los creyó la demandada.''

No existe impedimento alguno, a nuestro juicio, de parte de la demandante para exigir el cumplimiento de las obligaciones contraídas en el contrato de arrendamiento que no hubiesen prescrito al interponerse la acción. La teoría de *estoppel* no puede sostenerse en este caso ni de acuerdo con la jurisprudencia americana ni aplicando los principios de nuestro derecho civil. Los términos del contrato son bastante claros y no dejan lugar a dudas. La parte demandada sabía que tenía el deber de satisfacer la contribución y así lo hizo en los años de 1919 y 1923. No puede llamarse a engaño ni decir que la demandante la indujo a creer que la contribución no había aumentado, cuando tan fácil le hubiese sido averiguar la verdad, bien obteniendo la información directamente del arrendador o investigando en las oficinas del Tesoro de Puerto Rico; pero aun en la hipótesis de que el demandado abrigase esta creencia, no se ha probado que en virtud de la misma haya realizado acto alguno que pudiese perjudicarle, si se mantiene vivo el derecho de acción, a no ser que se considere perjudicial a sus·intereses el hecho de no haber pagado durante algunos años el aumento en la contribución que se obligó a satisfacer. La pasividad del demandado no puede concederle el derecho de interponer con éxito favorable la defensa de *estoppel*. Supongamos que la

contribución en vez de aumentar hubiese disminuído, y que el Banco demandado hubiese continuado no obstante pagando mensualmente la suma de $275 sin hacer descuento alguno, ¿estaría impedido el Banco de recobrar la contribución indebidamente satisfecha? Indudablemente que no. Pues la misma razón que autoriza al arrendatario a recobrar lo indebidamente pagado debe autorizar al arrendador para reclamar lo que no le ha sido satisfecho. La corte inferior, resolviendo acertadamente la cuestión planteada, se expresó así:

"En el contrato de arrendamiento el arrendatario convino únicamente en pagar el aumento de la contribución sin que exista, ni se haya establecido, deber alguno de los arrendadores de notificar previamente los aumentos al arrendatario para éste tener la oportunidad de obtener su revisión antes de pagar. La evidencia ha demostrado, por las declaraciones de don José León Núñez y Marcos A. Sacarelo, no contradichas, que mientras fué apoderado el Sr. León reclamó los aumentos pagados de las contribuciones, y dicho banco satisfizo, sin objeción alguna, $19.90 en noviembre 1°., 1919, y $281.64 en enero 11, 1923, en cuya última cantidad estaban acumuladas varias diferencias hasta diciembre 31, 1922. Y si bien es cierto que el apoderado Enrique Abarca Sanfeliz, que comenzó sus gestiones en 1925, no hizo reclamación alguna al demandado de los sucesivos aumentos pagados de la contribución hasta el 4 de octubre de 1929, no existe impedimento para su cobro, mientras no transcurra el término de prescripción."

Arguye la demandada que si los hechos apuntados no son suficientes para sostener la defensa de impedimento (estoppel), entonces la conducta de la demandante por lo menos justifica la defensa de demora (laches). Entiende la demandada que ninguna parte del aumento en las contribuciones puede recobrarse, toda vez que durante años Celestina Abarca abandonó cualquier reclamación sobre las mismas y nunca hizo ningún requerimiento al Banco; que los requerimientos hechos y los recibos presentados siempre lo eran por la suma de $275 solamente. No creemos que existiera laches por haber dejado Celestina Abarca de tratar de

942

recobrar este aumento en las contribuciones. El Banco claramente convino en pagarlas y era responsable de ellas. Nuestro Código Civil fija un término para la prescripción de las acciones y a sus disposiciones debemos atenernos para decidir si la demandante ha incurrido o no en demora que le impida ejercitar una causa de acción. Es claro que la demandante no tiene derecho a recobrar si la causa de acción ha prescrito; pero en caso contrario, el hecho de que haya dejado transcurrir algún tiempo sin reclamar el cumplimiento de la obligación no impide que acuda a la vía judicial para hacerla efectiva.

■ El séptimo error se basa en que la corte se negó a declarar la existencia de un acuerdo tácito entre las partes mediante el cual la renta que conforme al contrato original consistía de la suma de $275 mensuales, más la contribución pagadera por semestres anticipados, fué modificada, cambiada o sustituída por una renta fija de $275 mensuales, pagadera por semestres anticipados, eliminándose el aumento o disminución en las contribuciones. Se añade que la corte erró al no resolver que la demandante, por sus agentes y apoderados, recibió dichos $275 mensuales satisfechos por semestres anticipados como una satisfacción de dicho acuerdo.

La parte demandada entiende que se trata en este caso de un convenio que en la nomenclatura legal americana se conoce con el nombre de *accord and satisfaction,* y nos dice que el mismo principio está sancionado por nuestro Código Civil en su artículo 1063, edición 1930, que dice así:

"El recibo del capital por el acreedor, sin reserva alguna respecto a los intereses, extingue la obligación del deudor en cuanto a éstos. El recibo del último plazo de un débito, cuando el acreedor tampoco hiciere reservas, extinguirá la obligación en cuanto a los plazos anteriores."

La doctrina de *accord and satisfaction,* suponiendo que estuviese en vigor en Puerto Rico, no es aplicable a los hechos desarrollados en el presente caso. Para que el convenio que se conoce con el nombre de *accord and satisfaction* pueda

tener validez, es necesario que haya mediado causa. Es preciso también que el acreedor que cede su reclamación en todo o en parte reciba algún beneficio o que el convenio resulte en detrimento del deudor, aunque sea en grado mínimo. No somos refractarios y más bien nos sentimos inclinados a aceptar aquellos principios sanos y justos emanados del derecho común que sean compatibles con nuestro derecho civil y con las leyes aprobadas por nuestra Asamblea Legislativa; pero no procederíamos con acierto en estos esforzados empeños de enriquecer y acoplar nuestra jurisprudencia sin la preparación que se obtiene por medio del estudio y la investigación. Los abogados que contribuyen con sus luces a la difícil y delicada labor de fijar orientaciones y depurar conceptos y principios que tienen su origen en la fuente de ambos derechos, prestan un servicio de excepcional importancia a los tribunales y al foro en general, porque sus estudios e investigaciones, al pasar por el crisol judicial, se traducen en decisiones que establecen la jurisprudencia a seguir. Y no hay labor más noble y elevada que la que realiza la profesión al cooperar con los tribunales en la formación y desarrollo de una sana y justa jurisprudencia.

En cuanto al artículo 1063 del Código Civil, citado por la parte demandada, entendemos que tampoco es aplicable. No se trata en este caso del pago de intereses ni puede tampoco aplicarse el principio del recibo del último plazo de un débito. Aunque como resolveremos más adelante las contribuciones en este caso formaban parte de la renta, sin embargo, de los términos del contrato no surge que estas contribuciones debían pagarse simultáneamente con el importe de las mensualidades. El mismo banco satisfizo, en enero de 1923, la suma de $281.64 por concepto de aumento de contribuciones que cubría varios semestres atrasados. La conducta del demandado haciendo estos pagos, demuestra que no se intentó hacer reducciones o aumentos, de acuerdo con las bajas o alzas de la contribución, al tiempo de satisfacerse la mensualidad, porque si así hubiese sido, el primer aumento y los

posteriores se habrían pagado simultáneamente con dicha mensualidad. Por estas razones se desestima el error apuntado.

Los errores octavo y noveno se basan en que la sentencia es contraria a derecho y al peso y preponderancia de la evidencia aportada. No aparece ni se alega que la corte inferior haya apreciado erróneamente la prueba. Los errores que se señalan simplemente levantan cuestiones de derecho que ya hemos resuelto en esta misma opinión.

También la demandante apela y atribuye a la corte el error de haber declarado prescrita la acción para recobrar los aumentos de la contribución, hasta el primer semestre del año 1924–25, aplicando indebidamente el artículo 1866 del Código Civil.

Fué convenido que cualquier aumento que se hiciera en la contribución sobre el inmueble arrendado sería de cuenta del arrendatario y que cualquier reducción que se hiciera en esa contribución beneficiaría a dicho arrendatario. La parte demandante entiende que los términos en que está redactada esta cláusula no autorizan la conclusión de que el aumento de la contribución formara parte de las rentas. Es posible que esta cláusula, aisladamente considerada, engendre algunas dudas en el ánimo del juzgador sobre el particular mencionado; pero si se tiene en cuenta que mediaron negociaciones preliminares sobre la cuestión debatida, parece razonable la conclusión de la corte inferior en el sentido de que el aumento de la contribución en este caso constituye parte de la renta.

Con anterioridad al otorgamiento del contrato de arrendamiento se cruzaron varias cartas entre el Sr. Alexander McHardy, agente del Bank of Nova Scotia, y José León, apoderado de don Gumersindo Suárez, dueño entonces del inmueble.

En 14 de septiembre de 1918 el Sr. McHardy escribe al Sr. León, expresándole las condiciones que de acuerdo con la conversación por ambos sostenida debía contener el contrato de arrendamiento sobre la casa. En 16 de septiembre

de 1918 el Sr. León envió su contestación al Sr. McHardy, diciéndole que le parecían satisfactorios los términos indicados en su carta, con algunas ligeras modificaciones. Entre estas modificaciones figura la siguiente: "La renta será aumentada o disminuída de acuerdo con los impuestos que se le agreguen o resten a la propiedad en el futuro, sobre los que hoy tiene." Contestó el Sr. McHardy que no estaba conforme con dos de las condiciones especificadas por el Sr. León en su carta, a saber: la de que la renta fuese pagada por semestres y no por meses, y la de que la renta sería aumentada o disminuída de acuerdo con los impuestos que se le agregasen o restasen a la propiedad en el futuro. El Sr. León estuvo conforme con que la renta se pagase mensualmente en vez de semestralmente, pero insistió en la condición de que la renta fuese aumentada o disminuída de acuerdo con las alzas y bajas de las contribuciones. Así lo expresa el Sr. León en las palabras que copiamos de su carta dirigida al Sr. McHardy en 17 de septiembre de 1918: "Now, regarding the raising or reducing the rent, according to the increase or reduction that taxes levied on this building may have in future, this I believe is an equitable proposition, as we remain both in the same position, as the case may be. I trust you will reconsider this point and will accept it."

Aquí termina la correspondencia cruzada entre las partes sobre el asunto de la contribución. Esta última carta del Sr. León no fué contestada por el banco; pero un mes más tarde se llevó a cabo el contrato de arrendamiento donde se incorpora la condición sugerida y sostenida por el apoderado del Sr. Suárez. No hay razón para suponer que la proposición del Sr. León fuese rechazada en cuanto al aumento o disminución de la renta de acuerdo con las alzas y bajas de la contribución. En cambio sí la hay para sostener que fué aceptada por el Banco demandado en toda su integridad. La proposición original y la cláusula adoptada realizan el mismo propósito y aclaran y ponen de manifiesto la intención de las partes sobre el particular. Otro elemento a considerar

en relación con la intención de las partes es que, según se infiere del contrato, el arrendatario tendría que entenderse con el arrendador y no con el Tesorero bien para recibir el beneficio de la reducción de la contribución o para satisfacer el aumento de la misma, según el caso. Y que así lo entendieron las partes lo demuestra que los aumentos que sufrió la contribución en los primeros años transcurridos después de celebrado el contrato fueron pagados por el arrendatario al arrendador.

█ La defensa de prescripción se basa en el artículo 1866 del Código Civil, edición 1930, que en su parte pertinente dice así:

"Por el transcurso de cinco años prescriben las acciones para exigir el cumplimiento de las obligaciones siguientes:
"( * * * * * * *

"La de satisfacer el precio de los arriendos, sean éstos de fincas rústicas o de fincas urbanas."

La corte inferior resolvió que el aumento en las contribuciones formaba parte del canon de arrendamiento, y de acuerdo con el inciso segundo del artículo citado, declaró prescrita la causa de acción sobre una parte de las contribuciones. Consecuentes con el criterio que acabamos de exponer, opinamos que la corte inferior no cometió error alguno al declarar prescrito en parte el aumento en las contribuciones después de haber transcurrido cinco años desde que surgió la obligación de satisfacerlas.

El segundo y último error atribuído a la corte inferior por la parte demandante se relaciona con los intereses. Entiende la demandante que la corte erró al no conceder estos intereses, a razón del 6 por ciento anual desde octubre 22 de 1929. En realidad los intereses debían concederse desde el 4 de octubre del año indicado, en que se reclamó extrajudicialmente el pago del aumento en las contribuciones; pero como la demandante en su demanda y señalamiento de errores reclama intereses desde el 22 de octubre del referido año de 1929, debe modificarse la sentencia apelada de acuerdo

con lo solicitado, para no conceder a la parte demandante más de lo que pide.

En cuanto al pronunciamiento sobre costas,. entendemos que no han debido imponerse al banco demandado, dadas las circunstancias que han mediado en este caso.

*La sentencia apelada debe confirmarse, con la modificación de condenar al demandado a satisfacer el interés del 6 por ciento anual desde el día 22 de octubre de 1929 y de no hacer especial condenación de costas.*

El Juez Asociado Señor Wolf disintió, haciendo constar que no está conforme con la opinión de la corte en cuanto a los tres primeros errores atribuídos a la corte inferior, pero que, de no existir estos errores, estaría conforme con los demás extremos de la opinión.