Santos Góñez, en representación de su hija menor Esther Góñez, demandante y apelada, *v.* Armando, Antonio, Julio, María, Virginia, Mercedes, Aurora y Angela Palmieri, demandados y apelantes.

Núm. 6840.—*Sometido:* Noviembre 15, 1935. *Resuelto:* Julio 24, 1936.

458

*Leopoldo Tormes García*, abogado de los apelantes; *Cayetano Coll Cuchí, Cayetano Coll Cuchí, Jr.*, y *Luciano Colón*, abogados de la apelada.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Ante la Corte de Distrito de Ponce se inició un pleito intitulado ''Santos Góñez, en representación de su hija menor Esther Góñez'' y estas palabras también figuraban en el cuerpo de la demanda. El pleito era uno de filiación y los demandados excepcionaron la demanda, fundados en que Santos Góñez no tenía causa de acción. La excepción fué declarada sin lugar. El caso fué a juicio y se dictó sentencia en favor de la demandante.

El primer error señalado se basa en la actuación de la corte al declarar sin lugar la excepción previa. El argumento es que Santos Góñez no tenía causa de acción y que el pleito debió haberse instruído a nombre de su hija. Sin embargo, como el litigio fué entablado por Santos Góñez en representación de su hija y esto se desprende claramente de la demanda, no vacilamos en resolver que la verdadera parte interesada lo era Esther Góñez y que la madre compareció solamente en representación de ella. Artículo 153 del Código

Civil (edición de 1930), y véase el título del caso de *Colón* v. *Sucesión Tristani,* 44 D.P.R. 171; véase también *Abarca Sanfeliz* v. *Bank of Nova Scotia,* 46 D.P.R. 931, en que el suscribiente disintió.

■ Durante el juicio Santos Góñez ocupó la silla de los testigos para hablar de sus relaciones con Alfredo Palmieri, padre putativo de Esther Góñez. Basados en la sección 3 de la ley de marzo 10, 1904 (leyes de ese año, pág. 131), los demandados se opusieron a su testimonio. La sección específica en que se fundaron los demandados lee así:

"En las demandas por o en contra de los albaceas testamentarios, administradores o tutores, en las cuales pueda dictarse sentencia a favor o en contra de ellos como tales, ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuere llamado a declarar por la parte contraria; y las prescripciones de esta sección se aplicarán a todas las demandas por o en contra de los herederos y representantes legales de un finado, que se suscitaren de transacciones habidas con éste."

La Corte de Distrito de Ponce desestimó la objeción fundándose en que Santos Góñez no era la verdadera parte interesada y por ende no estaba sujeta a la prohibición de la ley. Éste era el fundamento del segundo señalamiento de error. Creemos que es suficientemente claro que Santos Góñez no era la parte verdaderamente interesada. Esta Corte también ha sostenido la admisibilidad de testimonio bajo estas circunstancias. *Colón* v. *Sucesión Tristani,* 45 D.P.R. 227.

La apelada también sostiene que la relación o transacción a que la ley se refiere no sería aplicable a la persona de una madre en un pleito de filiación. El suscribiente se inclina a creer que la sección es tan amplia que podría prohibirse a Santos Góñez que declarara si ella estuviese tratando de establecer un *status* para sí. Sin embargo, la mayoría de la corte en el caso de Tristani, supra, sugirió lo contrario.

■ El tercer error señalado es que la corte no debió haber llegado a la conclusión de que Santos Góñez y Alfredo Pal-

mieri vivían en concubinato por espacio de varios años y especialmente al tiempo de la concepción de la niña. De la prueba aducida en este caso la corte tuvo derecho a creer casi sin duda alguna que Alfredo Palmieri y Santos Góñez tuvieron relaciones carnales entre sí durante los años 1917 a 1921, de no tenerlas un poco antes. La demandante ofreció prueba tendente a demostrar que sostuvieron tales relaciones en el barrio de "Juan González", cerca de Adjuntas. Que en el año 1918 Alfredo Palmieri fué nombrado administrador de la Central Pellejas y se llevó allí a Santos Góñez, le puso una casa y que allí sostenían relaciones maritales.

Los demandados presentaron prueba relativamente fuerte tendente a demostrar que mientras residió en la Central, Santos Góñez estuvo empleada como sirvienta. Ella negó esto y dijo que estaba dispuesta a servirle a todo el mundo al igual que, según sugirió el letrado, cualquier mujer casada puede a veces hacerlo. La corte tuvo derecho a creer, y probablemente creyó, que surgió un estado de concubinato entre Alfredo Palmieri y Santos Góñez, mientras ambos residían en la Central. Empero, aunque la demanda era un poco ambigua a este respecto, de la evidencia se desprendía muy claramente que Esther Góñez, la hija de Santos, no fué concebida ni nació en la Central.

Allá para el año 1919, Alfredo Palmieri regresó al barrio de "Juan González" cerca de Adjuntas. Allí, según la prueba tiende a demostrar, le puso una casa a Santos Góñez, donde ésta vivía con su hermana y cuñado. Es con respecto a su residencia en "Juan González" que surge el conflicto principal en la prueba. Santos Góñez dice, o admite, que Alfredo Palmieri vivía, en parte, por lo menos, con sus hermanos en Adjuntas, a unos dos kilómetros de distancia. Pero ella asevera que él la visitaba todas las noches. El cuñado de ella ocupó la silla de los testigos y manifestó que Alfredo Palmieri dormía ocasionalmente en la casa todas las semanas. Él la sostenía y la visitaba frecuentemente, según se desprende de la prueba. Santos también declaró que Esther

Góñez era la hija de ella y de Palmieri, y que ella nunca había tenido relaciones sexuales con ningún otro hombre. Durante el tiempo que medió entre los años 1919 y 1921, Palmieri se fué a los Estados Unidos y regresó a Adjuntas o residía allí en el año 1921. Falleció en diciembre de dicho año y Esther Góñez nació en enero de 1922.

El testimonio de Santos Góñez mientras ocupaba la silla testifical fué muy poco satisfactorio en lo relativo a fechas. Repetidamente habló de los años "1928" y "1929" cuando ella necesariamente tuvo que querer decir 1918 y 1919 respectivamente. El juez mismo la interrogó y hasta cierto punto aclaró la cuestión, aunque a él no le fué posible hacerla identificar los años con precisión.

También hubo alguna prueba tendente a demostrar que uno y otro de los hermanos de Alfredo Palmieri había contribuído al sostenimiento de la niña durante algún tiempo después del nacimiento de ella, aunque esto fué negado.

Fuera del conflicto general en la prueba, uno de los fundamentos principales para atacar las conclusiones de la corte inferior es que no se demostró claramente que Alfredo Palmieri y Santos Góñez vivían en concubinato al tiempo de la concepción de Esther Góñez o nueve meses antes de su nacimiento. La corte así concluyó y no nos consideramos en posición de revocar el fallo.

A la conclusión que sí llegamos, o lo que resolvemos, según sea el caso, es que del testimonio pudo haberse deducido un estado de concubinato, mientras él y ella residían en la Central, es decir, que existía un estado de concubinato antes de que ambos regresaran a Adjuntas. Resolvemos, por tanto, que dados los antecedentes, cuando Palmieri puso una casa a Santos Góñez cerca de Adjuntas, continuaba la relación de concubinato ya establecida.

Por tanto, no es necesario que discutamos la contención de los apelantes de que la corte no tenía derecho a fundarse en el caso de Tristani, 44 D.P.R. 171. Nuestra decisión no

depende de dicho caso; tampoco dependió del mismo el razonamiento de la corte inferior.

La mayoría del tribunal no encuentra abuso de discreción en la concesión de costas, mas el juez que suscribe cree que no deben imponerse por los siguientes motivos:

Los demandados aparentemente componían una sucesión que, según es probable, se vió precisada a defenderse de la adquisición de un *status*. En opinión del infrascrito, ellos no estaban necesariamente obligados a investigar la certeza de la reclamación. No se trata de un caso, según de ordinario ocurre, en que al demandado contra quien se alega una obligación, se le pone o se le puede poner fácilmente en posesión de los hechos. En realidad, el pleito tendría que radicarse ora los demandados se opusieran o no a la reclamación. El *status* no podía transigirse fuera de la corte. Naturalmente, si los demandados están informados de los hechos, la situación varía. Al suscribiente le parece que en un caso de esta naturaleza la temeridad debe aparecer más claramente.

Además, la cuestión relativa a la continuación de un estado de concubinato una vez iniciado, fué una consideración que no había sido establecida antes por la jurisprudencia de este tribunal.

*Debe confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.