ENRIQUE CASTRO MARTÍNEZ y JOSÉ G. SALGADO, haciendo negocios bajo el nombre de REX KENNEL & SPORTING CLUB, demandantes y apelantes, *v.* LAS MONJAS RACING CORPORATION, demandada y apelada. LAS MONJAS RACING CORPORATION, demandante y apelada, *v.* ENRIQUE CASTRO MARTÍNEZ y JOSÉ G. SALGADO, haciendo negocios bajo el nombre de REX KENNEL & SPORTING CLUB, demandados y apelantes.

Núms. 8686 y 8687.—*Sometidos:* Diciembre 2, 1943. *Resueltos:* Marzo 6, 1944.

*Virgilio Brunet* y *José L. Novas,* abogados de los apelantes; *Edgar S. Belaval,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Para dilucidar controversias surgidas respecto a un contrato de arrendamiento entre la arrendadora "Las Monjas

Racing Corporation'' y los cesionarios de los primitivos arrendatarios, Sres. Castro y Salgado, se iniciaron dos litigios ante la Corte de Distrito de San Juan. Uno, iniciado por los subarrendatarios Castro y Salgado, solicitaba un decreto declaratorio que interpretase las relaciones contractuales existentes entre las partes debido a una alegada modificación del contrato original; y otro, incoado por la arrendadora, solicitaba de la corte ordenara a los cesionarios (subarrendatarios) el cumplimiento específico del contrato envuelto en la controversia. Ambos pleitos envolvían el mismo asunto y la corte de distrito los resolvió con una opinión. Castro y Salgado apelaron en ambos casos, los que resolveremos por una sola opinión.

Los hechos origen de estos litigios, pueden exponerse así: El 27 de abril de 1939 Las Monjas Racing Corporation arrendó a Edward Seremba y otros la pista para carreras de galgos y los terrenos y edificios adyacentes a la misma sitos en Hato Rey, Puerto Rico, por un término que expiraría el 31 de diciembre de 1947. El canon era del 2 por ciento sobre el ingreso bruto de cada noche de carreras, producto de los juegos de ''pool'', ''pari-mutuel'', ''subscription fund'', y cualquier otro efectuado en conexión con dichas carreras de galgos. El referido contrato fué modificado mediante contrato escrito en 21 de septiembre de 1939, aumentando el 2 por ciento al 4 por ciento. En 14 de diciembre de 1939 los arrendatarios cedieron a Salgado y Castro el contrato así modificado. En enero del 1940 los cesionarios empezaron a explotar el negocio y para esa época convinieron verbalmente con los oficiales de la corporación en variar los términos del contrato al efecto de que en vez de pagar el 4 por ciento pagarían el 2 por ciento sobre el ingreso bruto de los juegos arriba mencionados. Hubo asimismo una modificación referente al ''subscription fund''. El contrato escrito estipulaba que se pagaría el por ciento sobre los boletos emitidos para el juego del ''subscription fund'', convi-

niéndose en que se pagaría sobre los boletos vendidos. No hay controversia alguna en cuanto a estos hechos.

Las divergencias surgen en cuanto al alcance de las modificaciones habidas al contrato, esto es, si eran permanentes o si por el contrario, por el tiempo que estimara conveniente la arrendadora. Los cesionarios alegan que el convenio reduciendo el por ciento a pagar sobre el ingreso bruto fué por todo el tiempo que ellos estuvieran explotando el negocio.

La corte de distrito analizó la prueba presentada, dió crédito a los testigos de la corporación y concluyó que la reducción del por ciento a pagar por los subarrendatarios no fué una modificación del contrato, y sí una mera concesión provisional héchales por la arrendadora. En cuanto a la modificación referente al "subscription fund", la corte de distrito concluyó que a pesar de que la corporación estuvo dispuesta a hacerla permanente, esto no fué aceptado por los subarrendatarios, no habiendo por tanto modificación alguna del contrato.

Apelados conjuntamente ambos casos, se señalaron dos errores, a saber:

"1. Cometió error la corte inferior en su apreciación de la prueba al declarar que los arrendatarios comprendieron que la rebaja hecha en enero de 1940 era provisional y que al expirar el término convenido hicieron esfuerzos por hacer dicha modificación permanente; y al declarar que no hubo una modificación verbal del contrato escrito de arrendamiento.

"2. Cometió error de derecho la corte inferior al declarar que de haber las partes convenido la modificación verbal del contrato escrito de arrendamiento ésta lo fué sin causa o consideración alguna y que el hecho de que la arrendadora aceptara el canon de arrendamiento al tipo modificado no constituía una renuncia a su derecho a exigir en el futuro las rentas convenidas."

■ El primero de los errores apuntados se refiere a la apreciación de la prueba. No se ha imputado manifiesto error o pasión, prejuicio y parcialidad, ni del récord aparece la existencia de éstos. Por tanto, no estamos autoriza-

dos para intervenir con las conclusiones de hecho de la corte de distrito, toda vez que existía un conflicto en la prueba en cuanto a la alegada modificación verbal del contrato escrito.

No consideraremos los puntos suscitados por el segundo error, toda vez que las cuestiones de derecho en él levantadas están predicadas en la existencia del primer error, el cual, como ya hemos visto, no fué cometido por la corte inferior. Es decir, es académico el punto de si hubo causa o consideración para la alegada modificación verbal del contrato, en vista de la conclusión de hecho de la corte de distrito de que no ocurrió, como se alega, modificación verbal alguna. [4] Y de la misma manera, la contención de que el aceptarse una cantidad menor constituye una renuncia de la cantidad mayor como el canon a pagarse en el futuro, no está ante nos para ser resuelta (cf. Abarca v. Bank of Nova Scotia, 46 D.P.R. 931) toda vez que la corte inferior, dando crédito a los testigos de la corporación, dió como hecho probado que la rebaja del canon era provisional y quedó condicionada expresamente a ser revocada a voluntad de la corporación.

*Las sentencias de la corte de distrito serán confirmadas.*