## No. 11,171.

### City of Baltimore vs. City of New Orleans.

1. A resolution adopted by the council of a municipal corporation authorizing and directing its mayor to enter into a contract with a third person, when not acted on by the mayor and when no contract is made, does not of itself create a contract.
2. Parol evidence of verbal agreement by the mayor, when the contract is set up as creating title to immovable property, is inadmissible.
3. The rules relating to collations and succession partitions are expressly excepted from application to other partitions. Rev. C. C. 1290.
4. Ordinary partitions involve only property held in common, and can only arise between co-owners of such property.
5. A claim for money by one co-owner against another, in which all the co-owners are not concerned, can not be injected into the action for partition, not being incidental thereto, being an issue in which the plaintiff here has no concern, and not germane to the issue.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

Thos. J. Semmes for Plaintiff and Appellee.

E. A. O'Sullivan, City Attorney, and Horace L. Dufour, Assistant City Attorney, for Defendant and Appellant.

W. S. Benedict and Albert Voorhies for Intervenors and Appellants.

Chas. J. Theard, Curator ad hoc.

The opinion of the court was delivered by

Fenner, J.   This suit was instituted on August 14, 1867.   It is an action of partition of property alleged to be owned in common by the city of New Orleans and the city of Baltimore, consisting of a

tract of land of 177 arpents, arising out of a land claim bequeathed to them by John McDonough, which, subsequent to his death, was confirmed in their favor by an act of Congress passed June 7, 1858. The petition represented that the heirs of John L. Daniel claimed to own one undivided half of said land in virtue of some alleged contract with the two cities, which the city of Baltimore denies, so far as it is concerned, but calls on said heirs as well as the city of New Orleans to set forth their claims, and prays for a partition in kind or, if such division be not practicable, then for partition by sale.

The city of New Orleans filed answer on November 4, 1867, alleging joint ownership with the city of Baltimore, denying that any other parties have any interest and concurring in the prayer of plaintiff's petition.

No further proceedings were had until December 7, 1871, when a petition of intervention was filed by A. H. Isaacson, John Buckingham, L. N. Desharoon, A. T. Steele, and Sarah Isaacson, wife of A. H. Isaacson, who set forth that John L. Daniel was employed by Baltimore and New Orleans to procure the confirmation of the land claim herein involved, under a contract by which each of said cities agreed to give him one-half of what should be recovered for their benefit; that Daniel procured the passage of the confirmation act of Congress, which passed the land to the cities; that New Orleans had complied with her contract, and had transferred to Daniel the half of her half of the land so recovered by act passed before Kerr, notary, on June 6, 1859; but that Baltimore had refused to comply with her contract or to transfer to him any part of her interest in the land, but is, nevertheless, bound to do so. The intervenors further alleged that on June 20, 1859, Daniel transferred one-half of his entire interest to C. D. Hamilton, Jno. Buckingham and L. N. Desharoon in equal joint ownership; that on June 22, 1859, Daniel transferred to A. T. Steele his remaining half interest; and that on January 30, 1871, A. T. Steele had transferred the one-half of the interest then acquired by him to the two daughters of Daniel, viz.: Mrs. Sarah Isaacson and Mrs. Emily Brenham; and that on February 25, 1860, C. D. Hamilton had transferred the interest acquired by him as above to A. H. Isaacson.

It thus appears, not only by the allegations of the intervention, but by authentic acts of transfer produced and disputed by no one, that on the 20th and 22d of June, 1859, John L. Daniel had divested

himself of all interest whatever in the land in controversy, and that at the date of the intervention Daniel's interest in the land (whatever it may be) belonged to the following parties in the suit, viz.: to A. I. Steele, $\frac{6}{24}$; to A. H. Isaacson, $\frac{4}{24}$; to Jno. Buckingham, $\frac{4}{24}$; to L. W. Desharoon, $\frac{4}{24}$; to Mrs. Isaacson, $\frac{3}{24}$; to Mrs. Brenham (afterward Mrs. Seixas), $\frac{3}{24}$.

The intervenors prayed to be recognized as owners of one-half the property in the above proportions, and joined in the prayer for partition on that basis.

Here occurs another long halt in the proceedings of about sixteen years, until March, 1887, when the singular fact was discovered that on May 2, 1859, nearly two months prior to any of the transfers by Daniel to the above intervenors, the cities of Baltimore and New Orleans had sold and conveyed to third persons nearly one-half of the property consisting of 108 squares of ground under a plan by which the property had been laid off in streets and squares, and had received therefor the price of $75,284.

The record presents no evidence of these sales; but inasmuch as they are formally alleged by some of the parties, are denied by none, and have been acted upon by the judge below, they may be accepted as admitted facts *for the purposes of this case*, though without prejudice to any rights of parties in any other proceedings.

Thereupon, Mrs. Isaacson and Mrs. Seixas, who, as *heirs* of Daniel, had been made parties defendant to the original petition, appeared in the capacity of heirs and filed separate answers and pleas in reconvention, and, at the same time, A. T. Steele filed a new petition of intervention.

These pleadings are very lengthy, but may be summarized as follows:

They aver that the original intervention was filed in error and in ignorance of the sale by the two cities of the 108 squares, and they explain and excuse their ignorance; they set forth the fact of the said sales and the price received therefor; they say that as the sales were made, prior to the assignments of Daniel, to the other intervenors, the latter acquired no right or interest in the 108 squares of ground or in the price thereof; they say, however, that at the date of said sales the one-half of the 108 squares, as well as of the rest of the property, belonged equitably to John L. Daniel and to A. T. Steele, the latter of whom had been the partner of Daniel in the

whole transaction, and equally interested with him; that said sales and the conversion of the price were in fraud of the rights of said Daniel and Steele, and that the cities of Baltimore and New Orleans were bound to deliver to the said Steele and to the said heirs of Daniel one-half of the price received under said sales.

They, therefore, prayed for citation of the two cities, and for judgment against each of them for one-fourth of the $75,284, received as the price of said 108 squares, to be paid one-half to the said Steele and the other half to said heirs, respectively,

Both Baltimore and New Orleans filed exceptions to this intervention of A. T. Steele on the grounds: 1. That the heirs of Daniel and Hamilton, Desharoon and Buckingham were necessary parties thereto. 2. That the moneyed demand could not be injected into this partition suit. These exceptions were sustained and the intervention of Steele was dismissed, so far as the moneyed demand was concerned, but suffered to stand, so far as it claimed an interest in the land to be partitioned.

Buckingham and Desharoon were made parties through a curator *ad hoc*, who reiterates the claims set forth in their original intervention, and pleaded estoppel against the denial thereof by their co-intervenors.

On these pleadings, not very complete or scientifically framed, the case went to trial, resulting in a judgment discarding the 108 squares which had been sold by the two cities prior to suit and ordering a partition confined to the land remaining in common ownership, and decreeing said land to be owned as follows: Baltimore, $\frac{45}{96}$; New Orleans, $\frac{24}{96}$; A. J. Steele, $\frac{6}{96}$; A. H. Isaacson, $\frac{1}{96}$; Mrs. Isaacson, $\frac{3}{96}$; Mrs. Seixas, $\frac{3}{96}$; John Buckingham, $\frac{4}{96}$: and Desharoon, $\frac{4}{96}$.

The effect of this judgment is to recognize the claims of the assignees of Daniel, so far as his contract with New Orleans is concerned, and to reject them, so far as the alleged contract with Baltimore is concerned.

The only appellants from the judgment are A. H. Isaacson, Wm. Isaacson, the succession and heirs of A. T. Steele, and Mrs. Seixas. None of the appellees have asked for any amendment. The appellants complain of the judgment in two respects:

1. Because it rejects their demand against the city of Baltimore.
2. Because it rejects their demand for a moneyed judgment, and

34

excludes the proceeds of the 108 squares sold by the city from the partition.

I.

While the contract between Daniel and the city of New Orleans is fully proved, and is no longer in dispute, it must be conceded that there is an entire failure to establish a similar contract between Daniel and the city of Baltimore.

The very completeness of the proceedings by which New Orleans entered into her contract shows how incomplete remained the negotiation with Baltimore. Thus in the case of New Orleans we have not only an ordinance authorizing the mayor to contract with Daniel, but a formal written contract in pursuance thereof, followed by an ordinance authorizing the transfer to Daniel of the stipulated interest in the land and a subsequent actual transfer in compliance therewith.

No official action was taken by Baltimore beyond the adoption of the following ordinance:

"*Resolved*, That the mayor be authorized and directed to enter into such arrangements as have already been made by the city authorities of New Orleans for the prosecution of the claims of the estate of the late John McDonough and other grants, which have been declared invalid by the Supreme Court of the United States and which require a special act of confirmation."

The mayor never entered into such arrangements or made any contract. Some attempt was made to prove by parol some verbal arrangements between the mayor and Daniel, but as this evidence was offered in this case to establish title to an interest in the real estate in controversy, it was obviously inadmissible and, on objection, was properly ruled out. Moreover, that testimony itself shows that a written contract was contemplated and that efforts were made to obtain it which failed. The venerable Mayor Swann, who was in office at that date, testified that he had no recollection of any agreement with Daniel; that if he had made one it would be of record in the mayor's office, and he is sure that if he had made any agreement in a matter involving such important interests to the city, he would have been careful to see it recorded and put on file.

No proceedings were ever taken by Daniel during his lifetime to enforce his alleged contract with Baltimore so far as appears on this record; and it was not until 1871, thirteen years after the transaction,

that his heirs and assignees for the first time judicially allege such rights.

It is impossible for us to hold that the resolution above quoted operates a contract; it is nothing more than a power of attorney to the mayor to enter into a contract; and as he did not act under the power and no steps were ever taken to compel him to do so the contract was never made and does not exist.

## II.

This is not a partition of a succession, but an action of partition between co-proprietors of the same thing, and while, generally, the rules as to the partition of successions apply to the latter an express exception is made of those rules relating to collations. C. C. 1290.

The effort of appellants in this case is simply to destroy this exception and compel the city of New Orleans to collate the sums received by her for the property sold, and to bring it back into the active mass with the remaining land for partition as a whole. This can not be done. This kind of partition can only concern property held in common and can only arise between co-owners of such property.

Conceding the validity of the sales made by Baltimore and New Orleans of the 108 squares, the only property held in common between the parties to this suit was the balance of the 177 acres, and the judge properly confined the partition to that property. Appellants never had any interest in Baltimore's portion of the price of the 108 squares, and Baltimore has no interest in the portion of said price received by New Orleans. No part of this price, therefore, is held in indivision between the parties to this suit. Even if it could be said that the share of the price received by New Orleans belonged in indivision to the city and to appellants, that would not justify the injection of partition between them into this action, because Baltimore has no interest therein. But obviously it can not be claimed that the price received by New Orleans was a thing held in indivision or could be the subject of an action of partition between any parties. It is manifest the price passed into the ownership of the city of New Orleans and, if wrongfully received and converted.by her, gave rise, not to an action of partition, but simply to an action of debt. Such action can not be engrafted on a partition

State ex rel. Rocchi vs. Judge.

suit. It is not incidental to the main demand, but injects an issue in which the plaintiff has no concern and which is in no manner germane to the action.

If the appellants have a claim against the city of New Orleans for wrongful conversion of common property and failure to account for the price they must urge it in a separate and proper proceeding.

Judgment affirmed.