LUIS DE LA CRUZ, Plaintiff and Appellant, *v.* THE GOVERNMENT OF THE CAPITAL, Defendant and Appellee.

No. 9596. Argued February 12, 1948.—Decided March 31, 1948.

*Jorge de la Cruz Figueroa* for appellant. *William Luyando Charneco* and *Justo A. Casablanca* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

On June 13, 1947, the District Court of San Juan sustained a motion of the defendant, in which it was alleged that the complaint in this case did not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant, and as the court considered that said complaint was not amendable, it rendered judgment dismissing the action, with costs but without including attorney's fees.

The plaintiff moved for a reconsideration, which was peremptorily denied, and he thereupon appealed to this Court. Under the circumstances, and since the only error assigned is that the lower court erred "in holding that Ordinance No. 36 is not tantamount to a contract of purchase and sale between the plaintiff and the defendant which might be rescinded, as claimed by the plaintiff," the only question to be determined in this case is whether or not the complaint states a cause of action. Consequently, it is indispensable to examine first all the allegations of said complaint. They are, in brief, that the plaintiff entered into a contract of purchase and sale with the Government of the Capital in connection with two lots owned by him; that "all its terms" are set forth in Ordinance No. 36, enacted on July 3, 1944;[1] that after the said ordinance was accepted by the plaintiff, the City Manager requested him

[1] Ordinance No. 36.—Year 1944.—To authorize and direct the City Manager to proceed to purchase an urban property for the construction of a municipal market place; to provide for payment thereof, and for other purposes.

WHEREAS, the construction of a modern market place to facilitate the bringing into the city of vegetables and other goods for the daily consumption by our population, decreases the traffic of middlemen, thereby reducing living costs, with all the additional advantages of this kind of municipal organizations; and

WHEREAS, it has been and is the intention of the Board of Commisioners of the Government of the Capital to solve this problem at the earliest possible time, as soon as the present conditions of war and emergency permit it, and to raise the necessary funds therefor; and

WHEREAS, a building of this kind must be located in a suitable place and accessible to the main highways leading into the municipal territory; and

WHEREAS, it is a matter of common knowledge that, according to the investigations made during recent years in this municipality, it is almost impossible to find a vacant lot, which complies with the necessary requirements for the construction of a modern market place, with sufficient capacity to fulfill the greater part of our needs; and

WHEREAS, Mr. Luis de la Cruz has offered for sale to the Government of the Capital an urban property or lot which is described further on in this ordinance, and which by reason of its area and location complies with all the necessary requirements for the construction of said market place, providing sufficient space to construct therein a modern building with all the requisite installations, and in addition, it is located near the two principal highways leading into this capital; and

WHEREAS, Mr. Luis de la Cruz is willing to have the price of said building paid to him within the period of 10 years in equal installments, with interest

to deliver, and he accordingly delivered to the latter, the title-deeds to said lots for the purpose of complying with the terms of the ordinance through the execution of the corresponding conveyance; "that the Government of the Capital proceeded to occupy and did occupy said urban property, which it has been using since the date of the passage of said ordinance for its exclusive use and benefit, in the form and manner which will be stated further on in this complaint"; that without any justifiable cause, the Government of the Capital has refused to comply with the terms of the contract of purchase and sale, although it has retained the possession of the above-mentioned real property; that by virtue of the obligations contracted with the defendant, the plaintiff has been unable to exercise any act of ownership or possession over the said lots, and the contract has been re-

---

thereon at the rate of 5 per cent per annum, and to have negotiable promissory notes issued for each installment, as evidence of the debt; and

WHEREAS, the Department of Public Works of the Government of the Capital has favorably recommended said offer, and this Board of Commissioners has ordered said Department to survey and appraise said land, which survey has already been made, and the same appears in the corresponding plan prepared by the Department of Public Works; and

WHEREAS, in addition to the above-mentioned advantages, this lot is precisely close to most of the properties of the Government of the Capital located in the Municipality of San Juan; and

WHEREAS, it is undoubtedly advisable that this property be acquired by the Government of the Capital before it is transferred to a third person, and said Government is deprived of the opportunity now offered to obtain a proper and suitable location for the construction of the municipal place;

NOW, THEREFORE, BE IT ENACTED BY THE BOARD OF COMMISSIONERS OF SAN JUAN, P. R.

Section 1.—The City Manager is hereby authorized and directed to proceed to acquire, and he should acquire, free from any encumbrance and with a recordable title in favor of the Government of the Capital, the following urban properties, owned by Don Luis de la Cruz:

(a) Lot situated in the ward of Santurce, in the Municipality of San Juan, with an area of 1797.67 square meters, bounded on the north by Humberto de la Cruz; on the east by a concrete wall; on the south by a proposed street on land belonging to Don Luis de la Cruz, which street has an area of 794.40 square meters; and on the west by Figueroa Street.

(b) Urban: Lot situated in the ward of Santurce, Municipality of San Juan, with an area of 4108.25 square meters; bounded on the north by a

scinded, in view of the nonperformance on the part of the Government of the Capital; that in the meantime the plaintiff has sold to José Novas the lot marked "A" in the ordinance, such sale being subject to the abrogation of the contract with the Government of the Capital, and the plaintiff has been unable to deliver the property sold because the defendant is occupying it; that the plaintiff has had an opportunity to sell at a profit the other property and he has not been able to do so, or to carry out any transaction in connection therewith, due to the existence of said contract of purchase and sale with the Government of the Capital; "that the use of said property is valued at three thousand dollars ($3,000) annually, which the Government of the Capital has

proposed unbuilt street, on land of Don Luis de la Cruz and Hortensia Arce; on the south by Norte Street; and on the east by the Blind Asylum of the Government of the Capital; and on the west by Figueroa Street.

Section 2.—The purchase price of this real property shall be $10 per square meter; and the total amount shall be paid in ten years at the rate of $5,909.60 each year, with interest thereon at the rate of 5 per cent per annum, in accordance with the following schedule:

| Year | Principal | Interest | Total |
|------|-----------|----------|-------|
| 1945 | $5,909.60 | $2,954.80 | $8,864.40 |
| 1946 | 5,909.60 | 2,659.32 | 8,568.92 |
| 1947 | 5,909.60 | 2,363.84 | 8,273.44 |
| 1948 | 5,909.60 | 2,068.36 | 7,977.96 |
| 1949 | 5,909.60 | 1,772.88 | 7,682.48 |
| 1950 | 5,909.60 | 1,477.40 | 7,387.00 |
| 1951 | 5,909.60 | 1,181.92 | 7,091.52 |
| 1952 | 5,909.60 | 886.44 | 6,796.04 |
| 1953 | 5,909.60 | 590.96 | 6,500.56 |
| 1954 | 5,909.60 | 295.48 | 6,205.08 |

Section 3.—It is hereby expressly understood that the 794.40 square meters of the parcel of land containing the above-mentioned proposed street, which separates the two lots aforesaid, and which belongs to Don Luis de la Cruz, shall be transferred to the Government of the Capital as one of the conditions of this contract and without the payment of any money.

Section 4.—As evidence of the indebtedness contracted in this manner by the Government of the Capital with Don Luis de la Cruz for the acquisition of said real property, the City Manager shall issue in favor of Don Luis de la Cruz ten promissory notes, each for the sum of $_____ and the corresponding interest, each and all of them to be identical and numbered from 1 to 10, in the following form:

No._____ for $_____. Due April 1, 1945.

refused to pay to the plaintiff as compensation for the possession and enjoyment of said realty''; and that the non-performance of said contract by the defendant has caused the plaintiff damages in the sum of $40,000. Prayer is made for the rescission of the contract, and for the recovery of $40,000 as damages, and $3,000 annually for the possession, use, and enjoyment of the real property in question since July 3, 1944, together with costs and attorney's fees.

■ In answer to the demand for a bill of particulars as to the manner in which the Government of the Capital proceeded to occupy the urban property, and has been using it from the date of the approval of said ordinance, and as to how the claimed amount of $3,000 per annum has been fixed, the plaintiff stated: ''by storing therein construction materials and other equipment, also automobiles and trucks of

---

The Government of the Capital hereby acknowledges to owe, and promises to pay, to Don Luis de la Cruz or to his order, on April 1, 1945, the sum of $_____, plus the sum of $_____, making a total of $_____.

The debt evidenced by this instrument originated in the sale of two immovables, pursuant to an ordinance passed by the Board of Commissioners of the Government of the Capital on July 3, 1944, and the first $_____ represents an instalment of the total price of $_____, payable in ten years, according to said ordinance, in equal instalments, and the $_____ represents interest on the total amount of the unpaid debt, at the rate of 5 per cent per annum.

The payment of said sums shall be made only in the form and manner provided by said ordinance and upon the delivery and cancellation of this instrument by Mr. Luis de la Cruz, his assigns or successors.

Should this instrument be negotiated in any manner or endorsed by Mr. Luis de la Cruz or lawfully placed in the hands of third persons, it shall be the duty of the holder thereof to notify immediately the Municipal Auditor of San Juan and the Treasurer of Puerto Rico, for the proper purposes. This instrument shall be exempt from all municipal taxes.

San Juan, P. R.,_____of_____1944.

*City Manager.*

Note has been made of the pertinent part of this intrument
in the book of the Municipal Auditor's office.

*Municipal Auditor*

Section 5.—The Government of the Capital shall appropriate in the ordinary budgets for the succeeding fiscal years 1945–46 to 1955–56, the necessary funds, in accordance with this ordinance, to make the corresponding payments of principal and interest.

502

the Municipal Government'' and that said amount ''is the reasonable rental value of the realty.'' The bill of particulars thus submitted by the plaintiff should be considered as an integral part of the complaint. Rule 12(e) of the Rules of Civil Procedure. *Lókpez* v. *Lókpez,* 64 P.R.R. 652, 657.

■■ Turning now to the merits of the question involved, we will state that when an offer for sale is made to a muni- cipality and the latter accepts it by means of an ordinance enacted in due form, a contract arises *ipso facto* between the municipality and the person who made said offer. McQuillin, Municipal Corporations, vol. 3, Revised Second Edition, § 1267, p. 1091. However, according to the cited textwriter, when such an offer is made to a municipality and the latter passes an ordinance authorizing and directing its mayor, city manager, or any other executive officer to accept the same through the execution of the corresponding deed, this does

---

Section 6.—The Treasurer of Puerto Rico is hereby authorized to retain during each of the above-mentioned fiscal years and out of the proceeds of any tax pertaining to the Government of the Capital, the sums corresponding to each year for the payment of said obligations; and he likewise authorized to pay to Mr. Luis de la Cruz and his successors, assigns or representatives, each and all of the promissory notes mentioned in this ordinance and which are evidence of the contracted debt, and the Treasurer of Puerto Rico shall cancel said instruments and send them to the Municipal Auditor in San Juan pursuant to law.

Section 7.—The City Manager is hereby authorized to execute such in- struments as may be necessary to carry out this ordinance.

Section 8.—All ordinances or resolutions or drafts of ordinances or re- solutions in conflict with this ordinance, are hereby repealed.

Section 9.—This ordinance shall take effect immediately after its passage.

I, LINO PADRÓN RIVERA, Secretary of the Capital,

DO HEREBY CERTIFY: That the foregoing is a true and faithful copy of the original text of the Ordinance passed by the Board of Commissioners of San Juan, at its ordinary session held on July 3, 1944, Commissioners Blanco, Díaz, Collazo, Domínguez, Pesquera, Mrs. López de Ramos Casellas, and the President, Mr. Coll Cuchí having voted in the affirmative, and none in the negative.

In testimony whereof, I have hereunto affixed my signature and the seal of the Government of the Capital, at San Juan, Puerto Rico, this 10th day of July, 1944.

(Sgd.) LINO PADRÓN RIVERA
*Secretary of the Government*
*of the Capital.*

not of itself give rise to a contract, the authorization and order given being merely tantamount to a power of attorney. Nevertheless, the two cases cited by the textwriter McQuillin in support of this last assertion are manifestly different from the case at bar. Let us see: In *City of Baltimore* v. *City of New Orleans,* 45 La. Ann. 526, the heirs of John L. Daniel claimed to own one undivided half of certain land held by the City of Baltimore and New Orleans, both in the State of Louisiana, under bequests in their favor. In the opinion, after an extensive recital of the facts which gave rise to the claim, it is said:

"While the contract between Daniel and the city of New Orleans is fully proved, and is no longer in dispute, it must be conceded that there is an entire failure to establish a similar contract between Daniel and the city of Baltimore.

"The very completeness of the proceedings by which New Orleans entered into her contract shows how incomplete remained the negotiation with Baltimore. Thus in the case of New Orleans we have not only an ordinance authorizing the mayor to contract with Daniel, but a formal written contract in pursuance thereof, followed by an ordinance authorizing the transfer to Daniel of the stipulated interest in the land and a subsequent actual transfer in compliance therewith.

"No official action was taken by Baltimore beyond the adoption of the following ordinance:

" 'Resolved, That the mayor be authorized and directed to enter into such arrangements as have already been made by the city authorities of New Orleans for the prosecution of the claims of the estate of the late John McDonough and other grants, which have been declared invalid by the Supreme Court of the United States and which require a special act of confirmation.' "

The opinion goes on to state that the Mayor of Baltimore never entered into any arrangements similar to those entered into by the city of New Orleans, or made any contract; that an attempt was made to prove by parol some verbal arrangements between the Mayor and Daniel, but as this evidence was offered to establish title to a share or interest in

504

the real estate in controversy it was obviously inadmissible and, on objection, it was ruled out; and, moreover, that testimony itself showed that a written contract was contemplated and that efforts were made for such purpose which failed. In the opinion it is finally decided that:

"It is impossible for us to hold that the resolution above quoted operates a contract: it is nothing more than a power of attorney to the mayor to enter into a contract; and as he did not act under the power and no steps were ever taken to compel him to do so the contract was never made and does not exist."

In *Winklebleck* v. *City of Portland* (Oregon), 31 Pac. (2d) 637, there had been some litigation between the plaintiff and said city concerning a certain lot which the city desired to acquire in order to widen one of its streets. After a decision was rendered against the plaintiff, and when the term to appeal had not yet expired, the City of Portland enacted an ordinance which in its pertinent part provides: " . . . now, therefore, a settlement of said matter is hereby authorized by the Auditor and the Auditor may pay to the owners of said premises said amount of $1,500 upon receiving a clearance of title, provided that such owner or owners accept said amount as in full settlement, accord and satisfaction and waive any right of appeal to the Circuit Court for additional damages . . . " It was held that the ordinance was not equivalent to the execution of a contract between the city and the owner of the lot.

In the case at bar, when the Board of Commissioners acted in the manner it did, Ordinance No. 36 of July 3, 1944 became duly enacted. No further action on the part of the City Manager was necessary in order to complete such enactment. Section 19, Act No. 99 of May 15, 1931 (Laws of 1931, p. 626), as amended by Act No. 16 of April 3, 1937 (Laws of 1937, p. 137). That ordinance, as appears from footnote No. 1, after amply setting forth the necessity for the construction of a modern market place, states that "Mr. Luis de la Cruz

has offered for sale to the Government of the Capital an urban property or lot . . . which by reason of its area and location complies with all the necessary requirements for the construction of said market place . . . ";. that the plaintiff is willing to have the price of said building (*sic*) paid to him in 10 years; that the Department of Public Works of the Government of the Capital has favorably recommended the offer, and has made a survey of the lot and prepared the corresponding plans; and in the first Section of its dispositive part it provides that:

"The City Manager is hereby authorized and directed to proceed to acquire, and he should acquire (*sic*) free from any encumbrance and with a recordable title in favor of the Government of the Capital, the following urban properties, owned by Don Luis de la Cruz;"

Immediately thereafter the lots are described, the selling price thereof, as well as the manner in which it is to be paid, is set forth; the City Manager of the Capital is authorized to subscribe 10 promissory notes, each for a sum which is not mentioned; and, finally, in § 7, it is stated that "The City Manager is hereby authorized to execute such instruments as may be necessary to carry out this ordinance."

The language of this ordinance, taken as a whole, and the fact that the Government of the Capital took possession of the lots in question immediately after the ordinance was passed, convince us that the offer of the plaintiff Luis de la Cruz was, as a matter of fact and of law, accepted by the Government of the Capital. Now, did the mere acceptance of that offer by the defendant constitute a valid and enforceable contract? That seems to be one of the medular questions in this case.

According to § 42 of Act No. 99 of 1931 (Laws of 1931, pp. 626, 652), "The government of the Capital shall not incur obligations or debts additional to the budgetary appropriations, . . . " This provision has been interpreted in the sense that a contract is not enforceable against the

Government of the Capital unless there is available an appropriation in the budget to cover the payment of any obligation which might arise by reason of such contract. *Gayá* v. *Government of the Capital, ante,* p. 263. We have reached a similar conclusion in construing § 8(9) of the Municipal Law (Act No. 53 of 1928, Sess. Laws, p. 335. *Torrellas* v. *Municipality,* 62 P.R.R. 207; *González* v. *Municipality,* 61 P.R.R. 357, and cases cited therein, according to which if there is no appropriation in the budget to cover the payment occasioned by any contract entered into by a municipality or by the Government of the Capital, the contract is *ultra vires* and void. It is necessary, therefore, to determine whether the complaint filed in this case contains any allegation regarding the existence of funds in the budget or budgets of the Government of the Capital to cover the payment of the lots referred to in the above-mentioned ordinance.

Although § 6 of said ordinance provides that, ''The Treasurer of Puerto Rico is hereby authorized to retain during each of the above-mentioned fiscal years and out of the proceeds of any tax pertaining to the Government of the Capital, the sums corresponding to each year for the payment of said obligations; and he is likewise authorized to pay to Mr. Luis de la Cruz and his successors, assigns or representatives, each and all of the promissory notes mentioned in this ordinance and which are evidence of the contracted debt, and the Treasurer of Puerto Rico shall cancel said instruments and send them to the Municipal Auditor in San Juan pursuant to law,'' nevertheless, said authorization is not equivalent to the appropriation of an amount in the budget, such as is required by said § 42 of the Act creating the Government of the Capital. In said ordinance (§ 5), there is admitted the obligation to appropriate annually in the ordinary budget, during the years 1945–46 to 1955–56, the necessary sums to cover the payments of the principal and in-

terest of the debt; but the complaint does not contain any allegation that such appropriations were made. This being so, the contract which arose between the Government of the Capital and the plaintiff, as a result of the acceptance of the offer, is *ultra vires* and void. Since the action of rescission presupposes the existence of a valid contract (§ 1242 of the Civil Code, 1930 ed.), the complaint in this particular does not state a cause of action.

However, since it is possible that the plaintiff may amend his complaint and specifically allege therein the existence of funds in the budget or budgets of the Government of the Capital to cover the payment of the price of said lots, upon the case being remanded for the reasons which we will state further on in this opinion, the lower court should *sua sponte*, or at the instance of the plaintiff, grant him leave to amend his complaint, if he can do so, within such term as may be fixed. *Zapata* v. *Caribbean Casualty Co.*, 38 P.R.R. 618, 623; *Alcaide* v. *Morales*, 28 P.R.R. 258, 276; and *Sosa* v. *The American Railroad Co. of Porto Rico*, 12 P.R.R. 230, 237.

 The claim for damages which is set up in the complaint is but a consequence or sequel of the main action for rescission of the contract. It will succeed or not according to whether the main action prospers or fails. Naturally, as to this subsidiary action, for the reasons which we shall hereinafter set forth, it is not necessary that there should be an appropriation in the budget.

On the other hand, the complaint is not confined to demanding abrogation or rescission of the supposed contract between Luis de la Cruz and the Government of the Capital, or to claiming damages for nonperformance. It is also prayed therein that the defendant government be adjudged to pay to the plaintiff $3,000 annually for having taken possession of the lots in question from the date on which the ordinance was passed. For the purposes of the motion to dismiss filed

by the defendant, all the averments of the complaint must be taken as true. Cf. *Onna* v. *The Texas Co.*, 64 P.R.R. 497 and *Ramos* v. *People*, 67 P.R.R. 600. If a natural person takes possession of real property belonging to another, and has the use and enjoyment thereof to the exclusion of its true owner, the obligation of the former to pay for such use and enjoyment is entirely clear. The same rule is applicable to artificial persons and to political bodies similar to the Government of the Capital. Cf. *Ball* v. *Vilá*, 67 P.R.R. 388; *Capó* v. *A. Hartman & Co.*; 57 P.R.R. 190; *Travieso* v. *McCormick*, 54 P.R.R. 312; *Abarca Sanfeliz* v. *Bank of Nova Scotia*, 46 P.R.R. 898; *Díaz* v. *Hamburger Bros. & Co.*, 44 P.R.R. 877; and §§ 282 and 288 of the Civil Code, 1930 ed. The Government of the Capital can sue and be sued. Section 4(b) of Act No. 99 of 1931. See also § 46(d). If as alleged in the complaint, said government took possession of the lots described therein, it is unquestionable that it is bound to pay compensation to the plaintiff for such occupancy. Assuming that the plaintiff could not amend his complaint in order to allege that there was an appropriation in the budget to cover the payment of the price of the lots in question, the taking possession thereof would be a tortious act of the Government of the Capital, and a specific appropriation of funds would not be necessary in order to enforce such liability. The necessity to appropriate funds in the budget only exists when the liability claimed against the municipality arises upon a contract; but not when it arises by virtue of a tortious act of the municipality. See McQuillin, Municipal Corporations, Revised Second Edition, vol. 5, § 2331, pp. 1314, 1317, and *Dallas* v. *Miller*, 7 Tex. Civ. Ap. 503. As to how the plaintiff will collect if, upon proving his case, he obtains a judgment against the Government of the Capital for the unlawful occupancy of the lots, this is a question which is not now before us and which need not be determined at this time. His right to sue for the unlawful use of the lot is clear, and

there is no doubt that, as to this particular, the complaint states a cause of action.

The judgment appealed from should be reversed and the case remanded to the District Court of San Juan for further proceedings not inconsistent with this opinion.