Juan y Felícita Travieso, demandantes y apelantes, *v.* Chloris McCormick y Enrique Carbia, demandados y apelados.

Núm. 7296.—*Sometido:* Diciembre 7, 1938. *Resuelto:* Febrero 16, 1939.

*L. Santiago Carmona,* abogado de los apelantes; *Carlos J. Torres,* abogado de la apelada Chloris McCormick.

El Juez Asociado Señor De Jesús emitió la opinión del Tribunal.

El 21 de marzo de 1932 los hermanos Juan y Felícita Travieso Marín radicaron en la Corte de Distrito de Bayamón la demanda original de este pleito para reivindicar el interés que alegan tener en cierta finca radicada en el municipio de Guaynabo. La acción se dirigió al principio contra los de-

mandados Chloris McCormick, Enrique Carbia, Salvador Sierra y otros, de los cuales unos no fueron emplazados, y con respecto a otros, en el momento de dar principio al juicio oral, desistieron los demandantes de su acción, quedando así como únicos demandados Chloris McCormick y Enrique Carbia. Por consiguiente, en la reseña que nos proponemos hacer de las alegaciones de las partes, prescindiremos de los demás demandados que por una u otra razón no son partes en este litigio, concentrando nuestra atención en las alegaciones de los demandantes y en la de los demandados McCormick y Carbia.

Allá para el 17 de febrero de 1933 se enmendó la demanda, y sus alegaciones en lo que a estos dos demandados concierne pueden sintetizarse así: Que Aquilino Marín Velázquez, abuelo materno de los demandantes, falleció en el mes de octubre de 1918, en Río Piedras, bajo testamento que otorgó el 6 de julio de 1918, en el que instituyó como sus únicos y universales herederos a sus cuatro hijos legítimos de apellidos Marín y Ollor, y a sus nietos los demandantes, hijos legítimos de su hija que le premurió, Hermenegilda Marín Ollor, la que fué casada con Juan Travieso, padre de los demandantes. Que el caudal relicto por Aquilino Marín Velázquez consistió en una parcela de terreno de diez y ocho cuerdas, radicada en el Barrio Los Frailes, de Guaynabo, de la cual una quinta parte indivisa correspondió a los demandantes por concepto de herencia de su referido abuelo. Que en el año 1919, siendo entonces menores los demandantes, su padre, Juan Travieso, sin la autorización judicial correspondiente, compareció en representación de los demandantes, y en unión de los demás herederos vendieron todos por escritura pública a Elías B. Wilcox una mitad indivisa de la referida finca, cuya cabida resultó luego ser de veintitrés cuerdas y no de diez y ocho como aparecía de los títulos. Que en el año 1919 Elías B. Wilcox vendió su condominio en dicha finca a Rafael Bernabe, quien adquirió a sabiendas de que Wilcox no tenía un justo y legal título que pudiera

trasmitirle, y que Bernabe, en el año 1922, promovió a su nombre en la Corte de Distrito de San Juan una información de dominio sobre la misma, en la tramitación de la cual no se citaron ni mencionaron los anteriores dueños, ni fueron citados los demandantes, recayendo resolución el 7 de diciembre de 1922 declarando justificado a su favor el dominio de una parcela de 11.97 cuerdas, que resultó ser la cabida del condominio que le vendió Wilcox.   Que Bernabe alegó falsamente hallarse en posesión de la indicada parcela, cuando en realidad no tomó posesión de ella hasta el 23 de enero del siguiente año, mediante un auto de *injunction* expedido por la Corte de Distrito de San Juan, sección segunda.   Que en el año 1930 Jaime Fort, de quien se valió Bernabe para tomar posesión de la finca en la forma antedicha, la vendió a la demandada McCormick, sabiendo ésta al adquirirla que el título del vendedor estaba viciado de nulidad.   El otro demandado, Enrique Carbia, sin título alguno, en el año 1923 entró en posesión de otra parcela de tres cuerdas de la mencionada finca que originalmente se creyó de diez y ocho cuerdas pero que resultó ser de veintitrés, sin pagar canon o merced alguna a los demandantes por el condominio de éstos, consistente en una quinta parte de dichas tres cuerdas.   Que los frutos producidos por la quinta parte indivisa de la parcela ocupada por la Sra. McCormick ascienden a $5,000 y los del condominio sobre la parcela poseída por Carbia montan a $2,000.   Termina la demanda con súplica de que se dicte sentencia condenando a los demandados a entregar a los demandantes una quinta parte indivisa de cada una de las dos parcelas anteriormente mencionadas y a pagarles además $5,000 y $2,000 respectivamente por frutos producidos o debidos producir por dichas dos fincas, y que se condene además a dichos demandados al pago de las costas, gastos y honorarios de abogado.

Contestaron separadamente los demandados.   La demandada McCormick negó las alegaciones de la demanda y alegó la prescripción adquisitiva, tanto la ordinaria por haber po-

seído la finca quieta, pública y pacíficamente y sin interrupción alguna por espacio de diez años entre presentes, así como la extraordinaria de treinta años.

El demandado Carbia negó también las alegaciones de la demanda y en oposición a la misma alegó que cualquier defecto que pudiera haber en el título de su causante Wilcox quedó subsanado por actos de ratificación de los demandantes. Alegó además la prescripción adquisitiva, tanto la ordinaria como la extraordinaria, así como su condición de tercero, por haber adquirido de quien en el Registro aparecía como dueño, sin que del mismo apareciese vicio o defecto alguno que invalidase el título de su causante.

Los hechos que la corte estimó probados pueden resumirse así: Aquilino Marín Velázquez falleció en Río Piedras en octubre de 1918, dejando como sus herederos testamentarios a sus hijos legítimos Juan Antonio, María Nicomedes, Concepción y Aquilino Marín y Ollor, y a sus nietos los demandantes Juan y Felícita Travieso Marín, hijos de su legítima hija Hermenegilda Marín Ollor, quien falleció antes que el testador.

Correspondió a estos herederos en común proindiviso una parcela de terreno con una supuesta cabida de diez y ocho cuerdas, pero que luego resultó ser de veintitrés cuerdas, la cual aparecía inscrita a nombre del causante, Aquilino Marín Velázquez, en el Registro de la Propiedad.

El 9 de agosto de 1919 los hijos legítimos del testador, por su propio derecho, y los nietos, entonces menores de edad, Juan y Felícita Travieso Marín, representados por su padre con patria potestad Juan Travieso, comparecieron ante el notario don Juan B. Soto y otorgaron todos escritura de compraventa de la mitad indivisa de la indicada parcela, a favor de Elías B. Wilcox. No obtuvo Juan Travieso, padre, autorización judicial para la enajenación que hizo de la propiedad inmueble de sus hijos, pero diez y ocho días más tarde el menor Juan Travieso Marín fué emancipado por su padre mediante el otorgamiento de una escritura a ese efecto, la

que no fué anotada en el Registro Civil, conforme exige el artículo 233 del Código Civil (edición de 1930), para que la emancipación perjudique a tercero. El mismo día de la emancipación, el demandante Juan Travieso y la demandante Felícita, de igual apellido, que también se hallaba emancipada por razón de matrimonio, asistidos de su padre Juan Travieso, otorgaron una escritura ante el notario H. Torres Solá en la que ratificaron la venta hecha anteriormente por su padre sin autorización judicial, y vendieron por la misma escritura a Octavio García Salgado la participación que tenían en la otra mitad de la indicada parcela. Al siguiente día, 28 de agosto de 1919, Wilcox, mediante escritura pública, vendió a Rafael Bernabe el condominio que ya conocemos. Dividida la comunidad que existía entre Octavio García Salgado y Rafael Bernabe sobre la finca en cuestión, correspondió a este último una parcela de 11.97 cuerdas sobre la cual tramitó un expediente de dominio en la Corte de Distrito de San Juan, recayendo la resolución correspondiente, inscribiéndose su información de dominio en el Registro de la Propiedad el 18 de septiembre de 1922, al folio 129 del tomo 56 de Río Piedras, inscripción primera. En noviembre de 1922 Bernabe vendió la totalidad de su indicada finca a Manuel Prida, quien inscribió su título en el Registro de la Propiedad. En mayo de 1923 Prida vendió a Jaime y Gustavo Fort, causándose así la inscripción tercera. En septiembre de 1923 Gustavo Fort vendió a Jaime Fort, conforme resulta de la inscripción cuarta. En 15 de agosto de 1932 Jaime Fort vendió la finca a Tomás Martínez Morales, según la inscripción quinta, y en igual fecha este último la vendió a la demandada Chloris McCormick, la actual poseedora, quien también inscribió su título en el Registro de la Propiedad.

Estimó también probado el juez sentenciador que el 11 de mayo de 1923 la Corte de Distrito de San Juan declaró justificado el dominio a favor de Manuel Prida sobre otra parcela de ocho cuerdas ubicada en el barrio Monacillos, de

Río Piedras, insribiéndose el dominio que sobre dicha finca acreditó Prida el 7 de junio de 1923 al folio 8 del tomo 59 de Río Piedras, finca número 2527, inscripción primera, y por escritura de 23 de mayo de 1923 Manuel Prida vendió a Enrique Carbia la ameritada finca, motivando la inscripción segunda de la misma en el Registro de la Propiedad.

Con estos hechos por base, se dictó la sentencia que desestimó la demanda sin especial condenación de costas, contra la cual interpusieron los demandantes el presente recurso de apelación. Difícil es precisar cuáles son los cinco errores que los apelantes tratan de imputar a la corte senteniadora, pues por lo menos en lo que a los tres primeros respecta no se hace ún señalamiento separado como exige el reglamento de este tribunal. Con razón dice el abogado de la apelada, Sra. McCormick, en la página 9 de su alegato:

"Repetimos a este Hon. Tribunal Supremo que no existe una rigurosa imputación de errores, pero no queriendo evadir la cuestión litigiosa y sí entrar franca y serenamente en la discusión de la misma, hemos leído y releído el alegato de la parte apelante, tratando de averiguar algunas veces lo que no aparece claro y hemos llegado a la conclusión de que se imputan en la sentencia, como errores, las siguientes resoluciones o conclusiones de la Corte de Distrito de Bayamón:

"Primero: Reconocer validez y eficacia a los títulos de propiedad presentados por los demandados no obstante no haberse declarado nula la inscripción de dominio a favor de don Aquilino Marín Velázquez.

"Segundo: Haber dado validez a la escritura de ratificación otorgada por los demandantes Juan y Felícita Travieso en unión de su padre, no obstante ser la ratificada una escritura otorgada por éste a nombre de ellos sin la debida autorización judicial y siendo menores de edad.

"Tercero: Declarar probado que en 9 de agosto de 1919 por escritura ante el notario Juan B. Soto don Juan y Felícita Travieso vendieron una participación proindivisa que a los demandantes correspondía en la finca de Chloris McCormick.

"Cuarto: Declarar que el comprador de una finca por título inscrito en el Registro de la Propiedad es tercero respecto de los vicios

de nulidad de cualquier otro contrato inscrito.si la causa de esos vicios no consta en el Registro.

"Quinto: No haber declarado probada la comisión de daños a los demandantes y por tanto no hacer declaración alguna en cuanto a ellos."

Para evitar innecesarias repeticiones y por hallarse tan íntimamente relacionados los errores señalados, los vamos a discutir conjuntamente.

██ Es indudable que la escritura de compraventa otorgada ante el notario Juan B. Soto, por la cual el padre de los demandantes sin autorización judicial vendió la mitad del condominio que dichos demandantes poseían en la finca en cuestión, era nula en cuanto a estos demandantes respecta, pues siendo ellos menores de edad en la fecha de la enajenación, el padre no podía disponer de su propiedad inmueble sin la correspondiente autorización judicial. Pero esa escritura, que fué nula en la fecha de su otorgamiento en lo que a los demandantes respecta, fué convalidada tan pronto éstos, menores entonces ya emancipados, el uno por su padre (art. 233, Código Civil, ed. 1930) y la otra por razón de matrimonio (art. 239 del mismo Código), comparecieron ante el notario H. Torres Solá y asistidos de su padre ratificaron la venta que él celebró sin la correspondiente autorización judicial. Se afirma por los apelantes que la emancipación por el padre no fué válida porque no se anotó en el Registro Civil. No tienen razón los apelantes, porque el requisito de la anotación es sólo para que pueda producir efecto contra tercero, y mal puede llamarse tercero a aquel que como el Sr. Wilcox fué parte en el contrato por ellos ratificado después de su emancipación. Como prescribe el artículo 1265 del Código Civil (edición 1930), "la confirmación purifica el contrato de los vicios que adoleciera desde el momento de su celebración." Comentando Manresa el artículo 1313 del Código Civil español, igual al 1265 del nuestro, dice:

"La ratificación se parece más a aquélla (la confirmación), como que en realidad es una especie de la misma: es la confirmación limi-

tada y aplicada a subsanar un defecto, la intervención en el contrato, no del interesado en persona, y sí de otro que no tenía su representación o *se excedió de la conferida,* defecto o abuso que determinaría la nulidad de lo convenido, si la persona interesada no ratificase lo hecho en su nombre.'' 8 Manresa, Comentarios al Código Civil, 800, ed. 1907.   (Paréntesis y bastardillas nuestros.)

■■ Es verdad que estando inscrito el dominio a favor de Aquilino Marín Velázquez no podía legalmente inscribirse la información de dominio sobre la misma finca o partes de ella a favor de otras personas; pero es que prescindiendo del expediente de dominio tramitado por Bernabe, de quien deriva su título la demandada McCormick, y del tramitado por Prida, de quien deriva título el demandado Carbia, independientemente de tales informaciones de dominio, repetimos, tanto la una como el otro demandado adquirieron un título válido de los demandantes al ratificar éstos el contrato celebrado por su padre con el Sr. Wilcox, y al vender, ya emancipados, a Octavio García Salgado la otra mitad que les quedaba del condominio que heredaron en la parcela de diez y ocho cuerdas.

¿Cómo no había de declarar probada la corte la venta que hicieron los demandantes por la escritura de 9 de agosto de 1919 ante el notario Juan B. Soto, si dicha escritura se presentó en evidencia, al igual que la número 115, de 27 de agosto de 1919, ante el notario H. Torres Solá, por la cual los demandantes ratificaron la primera?

■ Claro es que siendo válido el título de los demandados pertenecen a ellos los frutos de sus respectivas fincas y al percibirlos no hacen otra cosa que ejercitar sus derechos dominicales.   Por consiguiente, no procedería pronunciamiento alguno contra ellos condenándoles a devolver frutos a los demandantes.

*Por lo expuesto, debe desestimarse el recurso y confirmarse la sentencia apelada.*

El Juez Presidente Sr. Del Toro no intervino.