Luis de la Cruz, demandante y apelante, *v.* El Gobierno de la Capital, demandado y apelado.

Núm. 9596.—*Sometido:* Febrero 12, 1948. *Resuelto:* Marzo 31, 1948.

*Jorge de la Cruz Figueroa,* abogado del apelante; *William Luyando Charneco* y *Justo A. Casablanca,* abogados del apelado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

En 13 de junio de 1947 el Tribunal de Distrito de San Juan declaró con lugar una moción del demandado en que se alega que la demanda radicada en este caso deja de exponer hechos constitutivos de una causa de acción a favor del demandante y en contra del demandado y entendiendo que dicha demanda no es enmendable dictó sentencia desestimándola, con costas, pero sin incluir honorarios de abogado. Solicitada reconsideración por el demandante la misma fué declarada de plano sin lugar, apelando entonces dicha parte para ante este Tribunal Supremo. Bajo estas circunstancias y dado el único error imputado a la corte inferior, al efecto de que ésta erró "al sostener que la aprobación de la ordenanza núm. 36 no equivale a un contrato de compraventa entre el demandante y el demandado que puede ser objeto de rescisión como pretende el demandante", la única cuestión a determinarse en este caso es si la demanda aduce o no una buena causa de acción. Se hace indispensable, en su consecuencia, examinar ante todo las alegaciones de la misma. Éstas son en síntesis que el demandante celebró un contrato de compraventa con el Gobierno de la Capital en relación con dos solares de su propiedad;

que el mismo consta "en todos sus términos" en la ordenanza núm. 36, aprobada el 3 de julio de 1944;(¹) que aceptada por el demandante la referida ordenanza, el Administrador de la Capital solicitó de él que le entregara, y él le entregó, los títulos de los aludidos solares, a los fines de cumplir con los términos de la ordenanza mediante el otorgamiento de la correspondiente escritura; "que el Gobierno de la Capital procedió a ocupar y ocupó dicha finca urbana,

---

(¹) Ordenanza núm. 36.—Año 1944.—PARA AUTORIZAR Y ORDENAR AL ADMINISTRADOR DE LA CAPITAL PARA QUE PROCEDA A LA COMPRA DE UNA FINCA URBANA CON DESTINO A LA EDIFICACIÓN DE UNA PLAZA DE MERCADO MUNICIPAL, PROVEYENDO EL PAGO DE LA MISMA, Y PARA OTROS FINES.—

POR CUANTO, la construcción de una plaza de mercado moderna, que facilite el aporte a la Ciudad de los frutos menores y otras mercaderías necesarias al consumo diario de nuestra población, disminuyendo el tráfico de intermediarios y abaratando la vida, con todas las demás ventajas de esta clase de organizaciones municipales; y

POR CUANTO, ha sido y es la intención de la Junta de Comisionados del Gobierno de la Capital resolver este problema a la mayor brevedad posible, tan pronto como las condiciones actuales de guerra y emergencia lo permitan, levantar los fondos necesarios para ello; y

POR CUANTO, un edificio de esta naturaleza necesita estar situado en condiciones favorables y accesibles a las vías principales de entrada al territorio municipal; y

POR CUANTO, es de conocimiento general que, por los estudios realizados durante los últimos años en esta municipalidad, es casi imposible encontrar un solar vacante que reúna condiciones satisfactorias para el emplazamiento de una plaza de mercado moderna, con amplitud suficiente para llenar la mayor parte de nuestras necesidades; y

POR CUANTO, el Sr. Luis de la Cruz ha ofrecido en venta al Gobierno de la Capital una finca urbana o solar que más adelante se describe en esta ordenanza, la cual por su extensión y posición reúne todos los requisitos necesarios para la construcción de dicha plaza de mercado, teniendo suficiente espacio para construir un edificio moderno, con todas las instalaciones del caso, además de su situación junto a las dos principales vías de entrada a esta Capital; y

POR CUANTO, el Sr. Luis de la Cruz está dispuesto a que el precio de dicho edificio (sic) le sea pagado en el término de diez años, por partes iguales, con intereses a razón del 5% anual, extendiéndose a su orden, como prueba de la deuda, pagarés negociables por cada plazo; y

POR CUANTO, el Departamento de Obras Públicas del Gobierno de la Capital ha recomendado favorablemente dicha oferta, habiendo esta Junta de Comisionados ordenado a dicho Departamento la mensura y tasación de dichos

la cual viene usando desde la fecha de la aprobación de dicha ordenanza, para su exclusivo uso y beneficio, en la forma y manera que más adelante se establece en esta demanda;'' que sin causa que lo justifique el Gobierno de la Capital ha rehusado cumplir los términos del contrato de compraventa, aunque reteniendo la posesión de los mencionados inmuebles; que por virtud de las obligaciones contraídas con el demandado, el demandante ha estado imposibilitado de ejer-

terrenos, cuya mensura ha sido efectuada y consta en el plano correspondiente hecho por el Departamento de Obras Públicas; y

Por cuanto, además de las ventajas anteriormente indicadas este solar está precisamente junto a la mayor parte de las propiedades del Gobierno de la Capital situadas en el Municipio de San Juan; y

Por cuanto, es de indiscutible conveniencia adquirir esta propiedad antes de que sea enajenada a tercera persona por el Gobierno de la Capital, privándosele así de la oportunidad que ahora se le presenta para obtener un sitio propio y adecuado para la construcción de la plaza del mercado municipal;

Por tanto, *ordénase por la Junta de Comisionados de San Juan, P. R.*

Sección 1ra.—El Administrador de la Capital por la presente ordenanza queda autorizado y por la presente se le ordena que proceda a adquirir y adquiriera (*sic*), libre de todo gravamen y con título inscribible a favor del Gobierno de la Capital, las siguientes fincas urbanas, propiedad de Don Luis de la Cruz;

(*a*) Solar situado en el Municipio de San Juan, Barrio de Santurce, con un área de 1797.67 metros cuadrados, colindando por el Norte, con Humberto de la Cruz, por el Este, con un muro de hormigón; por el Sur, con una propuesta calle en terrenos propiedad de Don Luis de la Cruz cuya calle tiene un área de 794.40 metros cuadrados; y por el Oeste, con la Calle Figueroa.

(*b*) Urbana: Solar situado en el barrio de Santurce, Municipio de San Juan, con un área de 4108.25 metros cuadrados; y colinda por el Norte, con una propuesta calle no construída, en terrenos de don Luis de la Cruz y Hortensia Arce; por el Sur, con la calle Norte; y por el Este, con el Asilo de Ciegos del Gobierno de la Capital y por el Oeste, con la calle Figueroa.

Sección 2da.—El precio de compra de este inmueble será a razón de $10.00 por metro cuadrado; y el total será pagadero en diez años a razón de $5,909.60 cada año, con más sus intereses a razón de 5% anual en la siguiente proporción:

| Año | Principal | Intereses | Total |
|---|---|---|---|
| 1945 | $5,909.60 | $2,954.80 | $8,864.40 |
| 1946 | 5,909.60 | 2,659.32 | 8,568.92 |
| 1947 | 5,909.60 | 2,363.84 | 8,273.44 |
| 1948 | 5,909.60 | 2,068.36 | 7,977.96 |
| 1949 | 5,909.60 | 1,772.88 | 7,682.48 |

cer ningún acto de dominio o posesión sobre los referidos solares, habiendo quedado resuelto el contrato, dado el incumplimiento de la obligación por parte del Gobierno de la Capital; que en el interregno el demandante ha vendido a José Novas el solar marcado con la letra A en la ordenanza, sujeta dicha venta a la resolución del contrato con el Gobierno de la Capital, no habiendo podido el demandante hacer entrega de la finca así vendida por estar ocupada la

| 1950 | 5, 909. 60 | 1, 477. 40 | 7, 387. 00 |
| 1951 | 5, 909. 60 | 1, 181. 92 | 7, 091. 52 |
| 1952 | 5, 909. 60 | 886. 44 | 6, 796. 04 |
| 1953 | 5, 909. 60 | 590. 96 | 6, 500. 56 |
| 1954 | 5, 909. 60 | 295. 48 | 6, 205. 08 |

Sección 3ra.—Es expresamente entendido que los 794.40 metros cuadrados de la parcela de la proyectada calle mencionada que separa estos dos solares y que es propiedad de don Luis de la Cruz, será trasmitida al Gobierno de la Capital como una de las causas de este contrato y sin precio alguno.

Sección 4ta.—Como prueba de la deuda contraída en esta forma por el Gobierno de la Capital con don Luis de la Cruz por la adquisición de dicho inmueble, el Administrador de la Capital suscribirá a favor de don Luis de la Cruz diez pagarés, cada uno por la suma de $_____ y los intereses correspondientes, siendo todos y cada uno de ellos iguales, numerados del uno al diez y en la siguiente forma:

No. —— Por: $_____ Valor el 1ro. de abril de 1945.

Por el presente documento el Gobierno de la Capital reconoce adeudar y se compromete a pagar a don Luis de la Cruz, o a su orden, el 1ro. de abril de 1945 la suma de $_____, con más la suma de $_____ haciendo un total de $_____.

Proviene esta deuda reconocida por medio de esta obligación de la compra venta de dos inmuebles, según ordenanza aprobada por la Junta de Comisionados del Gobierno de la Capital el día 3 de julio de 1944; y corresponden los primeros $_____ a un plazo del precio total de $_____, pagaderos en diez años, según dicha ordenanza, en plazos iguales, y los $_____ corresponden a los intereses sobre la totalidad de la deuda no solventada a razón del 5% anual.

El pago de dichas sumas se realizará solamente en la forma y manera que dicha Ordenanza especifica y mediante la entrega y cancelación de este documento por el Sr. Luis de la Cruz, o sus cesionarios o sucesores.

Caso de este documento ser negociado en cualquier forma o endosado por el Sr. De la Cruz o pasara legítimamente a manos de terceras personas, será la obligación del tenedor del documento notificar inmediatamente al Auditor Municipal de San Juan y al Tesorero de Puerto Rico, a los fines consiguientes. Este documento está exento de toda clase de contribuciones municipales.

misma por el demandado; que el demandante ha tenido oportunidad de vender ventajosamente la otra finca y no ha podido hacerlo así, ni realizar operación de clase alguna en relación con la misma, debido a la existencia de dicho contrato de compraventa con el Gobierno de la Capital; "que el uso de dicho inmueble tiene un valor de tres mil dólares ($3,000) anuales, que el Gobierno de la Capital se niega a pagar al demandante como precio de la posesión y disfrute

San Juan, P. R., a ____ de _____ de 1944.

Administrador de la Capital.

Tomada nota de este documento en lo correspondiente al libro de Auditoría Municipal.

Auditor Municipal.

Sección 5ta.—El Gobierno de la Capital consignará en sus presupuestos ordinarios durante los próximos años económicos de 1945–46 a 1955–56 las cantidades necesarias de acuerdo con esta ordenanza para satisfacer los pagos correspondientes al principal y sus intereses.

Sección 6ta.—Por la presente se autoriza al Tesorero de Puerto Rico a retener cada año económico de los anteriormente mencionados y del producto de las contribuciones pertenecientes al Gobierno de la Capital por cualquier concepto, las sumas correspondientes a cada año para el pago de dichas obligaciones; y, asimismo se le autoriza a pagar al Sr. Luis de la Cruz, o sus sucesores, cesionarios o quien su derecho represente, todos y cada uno de los pagarés mencionados en esta ordenanza y que son prueba de la deuda contraída, debiendo el Tesorero de Puerto Rico cancelar dichos documentos y remitirlos al Auditor Municipal en San Juan a los fines de ley.

Sección 7ma.—Al Administrador de la Capital se le autoriza por la presente a otorgar los documentos que fueren necesarios a los fines de llevar a cabo esta ordenanza.

Sección 8va.—Toda Ordenanza o Acuerdo o proyecto de Ordenanza o Acuerdo que se opusiere a la presente, queda por la presente derogada.

Sección 9na.—Esta Ordenanza comenzará a regir inmediatamente después de su aprobación.

Yo, LINO PADRÓN RIVERA, Secretario de la Capital,

CERTIFICO: Que la precedente es una copia fiel y exacta del texto original de la Ordenanza aprobada por la Junta de Comisionados de San Juan, en su sesión ordinaria celebrada el día 3 de julio de 1944, habiendo votado en la afirmativa los Comisionados señores Blanco, Díaz, Collazo, Domínguez, Pesquera, señora López de Ramos Casellas y el Presidente, Sr. Coll Cuchí, y en la negativa ninguno.

Y para que así conste, firmo la presente y estampo el sello del Gobierno de la Capital en San Juan, Puerto Rico, hoy día 10 de julio de 1944.

(Fdo.) LINO PADRÓN RIVERA,
Secretario del Gobierno de la Capital.

de dicho inmueble;" y que el incumplimiento del referido contrato por parte del demandado le ha causado perjuicios por la suma de $40,000. Se solicita la resolución del contrato, $40,000 en concepto de daños y perjuicios, y $3,000 anuales por la posesión, uso y disfrute de dichos inmuebles desde el día 3 de julio de 1944, más los gastos y honorarios del procedimiento.

En respuesta a la súplica de que se especificara en qué forma procedió el Gobierno de la Capital a ocupar la finca urbana, cómo la viene usando desde la fecha de la aprobación de la referida ordenanza y cómo se ha fijado el precio de $3,000 anuales, el demandante manifestó "depositando en ella material de construcción y otros materiales, también automóviles y trucks del Gobierno Municipal" y "ése es el valor razonable del arrendamiento del inmueble." El pliego de particulares así sometido por el demandante debe considerarse como parte integrante de la demanda. Regla 12(e) de las de Enjuiciamiento Civil. *Lókpez* v. *Lókpez*, 64 D.P.R. 684, 689.

Entrando ahora en los méritos de la cuestión envuelta, diremos que cuando se hace una oferta de venta a un municipio y éste la acepta por medio de una ordenanza aprobada en debida forma surge *ipso facto* un contrato entre el municipio y la persona que hizo tal oferta. McQuillin, *Municipal Corporations,* Vol. 3, segunda edición revisada, sección 1267, pág. 1091. Sin embargo, según dicho tratadista, cuando se le hace semejante oferta a un municipio y éste aprueba una ordenanza autorizando y ordenando a su alcalde, administrador u otro funcionario ejecutivo que proceda a aceptar la oferta mediante el otorgamiento de la correspondiente escritura, no surge de inmediato un contrato, equivaliendo la autorización y orden dadas meramente a un mandato. No obstante, los dos casos citados por el tratadista McQuillin en apoyo de este último aserto son a todas luces distintos al que nos ocupa. Veamos: En el de

*City of Baltimore* v. *City of New Orleans,* 45 La. Ann. 526, los herederos de John L. Daniel alegaban ser dueños de la mitad proindivisa de ciertos terrenos poseídos a virtud de legados por las ciudades de Baltimore y Nueva Orleans, ambas en el Estado de Louisiana. Luego de relatarse extensamente los hechos que dieron lugar a la reclamación, se dice en el curso de la opinión:

"Si bien el contrato entre Daniel y la ciudad de Nueva Orleans ha quedado plenamente probado y no está ya en controversia, es necesario admitir que no se ha establecido en forma alguna un contrato similar entre Daniel y la ciudad de Baltimore.

"Lo acabado de los procedimientos a virtud de los cuales la ciudad de Nueva Orleans celebró su contrato demuestra cuán incompletos permanecieron las negociaciones con la ciudad de Baltimore. Así pues, en el caso de Nueva Orleans tenemos no sólo una ordenanza que autoriza a su alcalde a contratar con Daniel, sino también un contrato formal por escrito otorgado en armonía con la misma, seguido de una ordenanza autorizando el traspaso a Daniel del interés estipulado y un traspaso posterior del terreno en cumplimiento del convenio.

La ciudad de Baltimore no dió paso oficial de clase alguna, fuera de la aprobación de la siguiente ordenanza:

" 'Resuélvese, que se autoriza y ordena al alcalde que entre en acuerdos similares a los ya celebrados por la ciudad de Nueva Orleans para la prosecución de las reclamaciones de la sucesión del finado John McDonough y de otras concesiones, que han sido declaradas inválidas por la Corte Suprema de los Estados Unidos y que requieren un acto especial de confirmación.' "

Se sigue diciendo en el curso de la opinión que el alcalde de Baltimore nunca llevó a cabo arreglos similares a los celebrados por la ciudad de Nueva Orleans, ni otorgó jamás contrato alguno; que se trató de probar mediante evidencia oral algunos acuerdos celebrados verbalmente entre el alcalde y Daniel, pero que como esa prueba fué ofrecida para establecer el título de una participación o interés en los inmuebles en controversia, ella era claramente inadmisible y

al presentarse la debida objeción la misma fué eliminada; y que además todo ese testimonio demuestra que se tuvo en mente un contrato escrito y que se hicieron sin éxito esfuerzos con tal fin. En la opinión finalmente se decide que:

"Es imposible para este Tribunal resolver que la resolución arriba citada opera como un contrato: ella no es otra cosa que un poder (*power of attorney*) concedido al alcalde para celebrar un contrato, y como éste no actuó de conformidad con tal poder y no se dieron pasos de clase alguna para compelerlo a así hacerlo, el contrato nunca se celebró y no existe."

En el caso de *Winklebleck* v. *City of Portland* (Oregon), 31 P.2d 637, existía un pleito entre el demandante y dicha ciudad en relación con cierto solar que ésta interesaba para el ensanche de una de sus calles. Luego de dictarse sentencia contra el demandante y cuando el término para apelar no había aún expirado, la ciudad de Portland adoptó una ordenanza que en lo pertinente dispone: "Por tanto, se autoriza al Auditor a transigir el asunto y a pagar al dueño del indicado solar la suma de $1,500 al recibir un título libre de cargas, siempre que tal dueño acepte la referida cantidad en pago total y renuncie su derecho a apelar para ante la Corte de Circuito en reclamación de daños adicionales . . ." Se resolvió que la ordenanza no equivalía a la celebración de un contrato entre la ciudad y el dueño del solar.

Cuando en el caso que nos ocupa la Junta de Comisionados actuó en la forma en que lo hizo, la ordenanza núm. 36 de 3 de julio de 1944 quedó debidamente aprobada. No era necesaria actuación ulterior alguna de parte del Administrador de la Capital para que tal aprobación quedara consumada. Artículo 19, Ley núm. 99 de 15 de mayo de 1931 (pág. 627), según quedó enmendada por la Ley núm. 16 de 3 de abril de 1937 (pág. 144). Esa ordenanza, conforme se verá por la nota núm. 1 al calce, luego de exponer con amplitud la necesidad de que se construya una plaza de mer-

cado moderna, expresa que ''el Sr. Luis de la Cruz ha ofrecido en venta al Gobierno de la Capital una finca urbana o solar . . . la cual por su extensión y posición reúne todos los requisitos necesarios para la construcción de dicha plaza de mercado . . . ''; que el demandante está dispuesto a que el precio de dicho edificio (*sic*) le sea pagado en el término de diez años; que el Departamento de Obras Públicas del Gobierno de la Capital ha recomendado favorablemente la oferta, efectuado una mensura de los solares y hecho el plano correspondiente; y en la sección primera de su parte dispositiva expone que:

''El Administrador de la Capital por la presente ordenanza queda autorizado y por la presente se le ordena que proceda a adquirir y adquiriera (sic) libre de todo gravamen y con título inscribible a favor del Gobierno de la Capital, las siguientes fincas urbanas, propiedad de Don Luis de la Cruz.''

Inmediatamente se describen los solares, se especifica cuál será el precio de éstos y la forma en que el mismo será pagado; se autoriza al Administrador de la Capital a suscribir diez pagarés, cada uno por una suma que no se menciona, y finalmente, en la sección séptima que ''Al Administrador de la Capital se le autoriza por la presente a otorgar los documentos que fueren necesarios a los fines de llevar a cabo esta ordenanza.''

El contexto de esa ordenanza en su integridad y el hecho de haber el Gobierno de la Capital tomado posesión de los solares en cuestión inmediatamente que la misma se aprobó, nos lleva al convencimiento de que la oferta del demandante Luis de la Cruz fué, como cuestión de hecho y de derecho, aceptada por el Gobierno de la Capital. Ahora bien, ¿hizo surgir un contrato válido y exigible entre las partes la mera aceptación de esa oferta por el demandado? Ésa parece ser una de las cuestiones medulares en el caso.

Según el artículo 42 de la Ley núm. 99 de 1931 (págs. 627, 653) ''El gobierno de la capital no podrá in-

currir en obligaciones o deudas adicionales a los créditos asignados en el presupuesto, . . . '' Ese precepto ha sido interpretado en el sentido de que no es exigible un contrato contra el Gobierno de la Capital a no ser que haya una asignación de fondos en el presupuesto para hacer frente a la obligación de pagar que surja con motivo de tal contrato. *Gayá Benejam* v. *Gobierno de la Capital*, ante, pág. 281. A igual conclusión se ha llegado al interpretar el artículo 8, inciso 9 de la Ley Municipal (núm. 53 de 1928, pág. 335). *Torrellas* v. *Municipio*, 62 D.P.R. 217; *González* v. *Municipio*, 61 D.P.R. 369 y casos en ellos citados, según los cuales, al no haber asignación en el presupuesto para sufragar los gastos ocasionados por cualquier contrato celebrado por un municipio o por el Gobierno de la Capital, el contrato resulta *ultra vires* y nulo. Es menester, por ende, determinar si la demanda radicada en este caso contiene alguna alegación relativa a la existencia de fondos en el presupuesto o los presupuestos del Gobierno de la Capital para hacer frente al pago de los solares a que se hace referencia en la ordenanza ya mencionada.

Si bien la referida ordenanza en su sección sexta ''autoriza al Tesorero de Puerto Rico a retener cada año económico de los anteriormente mencionados y del producto de las contribuciones pertenecientes al Gobierno de la Capital por cualquier concepto, las sumas correspondientes a cada año para el pago de dichas obligaciones; y, asimismo se le autoriza a pagar al Sr. Luis de la Cruz, o sus sucesores, cesionarios o quien su derecho represente, todos y cada uno de los pagarés mencionados en esta ordenanza y que son prueba de la deuda contraída, debiendo el Tesorero de Puerto Rico cancelar dichos documentos y remitirlos al Auditor Municipal en San Juan a los fines de ley'', sin embargo, tal autorización no equivale a la asignación de un crédito en presupuesto, tal cual lo exige la aludida sección 42 de la Ley creando el Gobierno de la Capital. En la misma or-

denanza (sección 5a.) se admite la obligación de consignar anualmente en presupuesto ordinario, durante los años 1945–46 a 1955–56, las cantidades necesarias para satisfacer los pagos correspondientes al principal e intereses de la deuda, pero la demanda no contiene alegación alguna de que tales asignaciones se hicieran. Siendo ello así, el contrato que como resultado de la aceptación de la oferta surgió entre el Gobierno de la Capital y el demandante resulta ser ultra vires y nulo. Como la acción rescisoria presupone la existencia de un contrato válido (artículo 1242 del Código Civil, Ed. de 1930) la demanda a ese respeto no aduce hechos constitutivos de una causa de acción.

Ahora bien, como existe la posibilidad de que el demandante pueda enmendar su demanda y alegar en ella específicamente la existencia de fondos en el presupuesto o presupuestos del Gobierno de la Capital para cubrir el pago del precio de dichos solares, al devolvérsele el caso por las razones que más adelante aduciremos, el Tribunal inferior deberá *sua sponte* o a instancias del demandante dar permiso a éste para que enmiende su demanda, si ello le es posible, dentro del término que se fije. *Zapata* v. *Caribbean Casualty Co.*, 38 D.P.R. 688, 693; *Alcaide* v. *Morales*, 28 D.P.R. 278, 296; y *Sosa* v. *The American Railroad Co. of Porto Rico*, 12 D.P.R. 239, 246.

La reclamación de daños y perjuicios que se hace en la demanda no es sino consecuencia o secuela de la acción principal sobre rescisión de contrato. Ella prevalecerá o fracasará, según prevalezca o fracase dicha acción principal. Naturalmente, en lo que a esta acción subsidiaria concierne, por los motivos que más adelante exponemos, no es menester que haya una asignación de fondos en presupuesto.

Por otra parte, la demanda no se limita exclusivamente a solicitar la resolución o rescisión del supuesto contrato entre Luis de la Cruz y el Gobierno de la Capital, ni a soli-

citar daños y perjuicios por el incumplimiento del mismo.
En ella se solicita además que se condene al gobierno de-
mandado a pagar al demandante $3,000 anuales por haber
tomado éste posesión de los solares en cuestión desde el día
mismo en que se aprobó la ordenanza. A los fines de la
moción para desestimar presentada por el demandado, to-
das las alegaciones de la demanda deben aceptarse como
ciertas. *Cf. Onna* v. *The Texas Co.*, 64 D.P.R. 520 y *Ramos*
v. *Pueblo*, 67 D.P.R. 640. Si una persona natural toma po-
sesión de un inmueble perteneciente a otra, teniendo el
goce y disfrute del mismo con exclusión de su verdadero
dueño, la obligación de aquél de pagar por tal uso, goce y
disfrute es enteramente clara. Igual principio es aplicable
a personas jurídicas y a entidades políticas como el Go-
bierno de la Capital. *Cf. Ball* v. *Vilá*, 67 D.P.R. 415; *Capó*
v. *A. Hartman y Cía.*, 57 D.P.R. 196; *Travieso* v. *McCor-*
*mick*, 54 D.P.R. 328; *Abarca Sanfeliz* v. *Bank of Nova Sco-*
*tia*, 46 D.P.R. 931; *Díaz* v. *Hamburger Bros. & Co.*, 44 D.P.R.
901; y artículos 282 y 288 del Código Civil, edición de
1930. El Gobierno de la Capital puede demandar y ser
demandado. Artículo 4(*b*) de la Ley núm. 99 de 1931.
Véase también el artículo 46(*d*). Si dicho gobierno tomó
posesión, según se alega en la demanda, de los solares que
en la misma se describen, es incuestionable que éste viene
obligado a indemnizar al demandante por tal posesión. En
el supuesto caso de que el demandante no pudiera enmen-
dar su demanda a fin de alegar que hubo asignación en pre-
supuesto para hacer frente al pago del precio de los sola-
res en cuestión, la toma de posesión de ellos resultaría ser
un acto torticero del Gobierno de la Capital y no sería ne-
cesario que hubiera una asignación específica de fondos en
presupuesto para hacer frente a tal responsabilidad. La
necesidad de asignar fondos en presupuesto existe sola-
mente cuando la obligación reclamada contra el municipio
surge a virtud de un contrato, mas no cuando surge a vir-

tud de un acto torticero del municipio. Véase McQuillin, *Municipal Corporation,* Segunda Edición Revisada, Vol. 5, sección 2331, págs. 1314, 1317, y *City of Dallas* v. *Miller,* 7 Tex. Civil Appeals 503. Cómo el demandante habrá de cobrar, si al probar su caso obtiene sentencia contra el Gobierno de la Capital, por la posesión ilegal de los solares, es cuestión que no ·está ante nos y que no es menester resolvamos por ahora. Su derecho a demandar por el uso ilegal de los solares es claro y no hay duda de que en cuanto a ese extremo la demanda aduce una buena causa de acción.

*Debe revocarse la sentencia apelada y devolverse el caso al Tribunal de Distrito de San Juan para ulteriores procedimientos no inconsistentes con esta opinión.*