SAN MIGUEL, GONZÁLEZ y VALIENTE & COMPAÑÍA, demandante y apelante, *v.* MUNICIPIO DE CAGUAS, demandado y apelado.

Núm. 9722.—*Sometido:* Febrero 10, 1949. *Resuelto:* Mayo 10, 1949.

E. *Martínez Rivera* y *Luis Blanco Lugo,* abogados de la apelante; *Federico E. Virella,* abogado del apelado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Por ordenanza aprobada en 1928 el Municipio de Caguas contrató un empréstito por la suma de $146,000 para cubrir el costo de ciertas mejoras a su acueducto y de otras obras municipales. De ese empréstito se asignó inicialmente la cantidad de $60,000 para la planta de filtración del acueducto, pero por nueva ordenanza aprobada el 8 de enero del siguiente año la misma fué aumentada a $80,000. La buena pro para la construcción de la planta de filtración fué adjudicada en subasta pública al ingeniero Robert R. Prann por la suma de $33,976.64, formalizándose el contrato final entre las partes en 3 de febrero de 1931 y siendo éste aprobado por el Comisionado del Interior de Puerto Rico en 13 de abril del mismo año. La obra fué realizada a satisfacción de las partes por el contratista, mas practicada la liquida-

ción final del contrato por el Comisionado del Interior, la misma revéló que el costo total de la obra ascendía a $45,753.33, siendo el exceso de $12,484.63 certificado por dicho comisionado para su pago por el municipio.

Adeudando el contratista por otros conceptos una suma mayor al Banco Territorial y Agrícola de Puerto Rico que a la sazón se hallaba en liquidación, la Corte de Distrito de San Juan autorizó poco después el traspaso al citado banco de los derechos que con motivo del anterior contrato tenía Prann. contra el Municipio de Caguas. Transcurrieron los años y hallándose el Banco Territorial y Agrícola en posesión del crédito cedídole, que aún permanecía insoluto, en 25 de marzo de 1943 vendió el mismo a la demandante por la suma de $2,500. En relación con dicho crédito la apelante inició un procedimiento de *mandamus,* del que desistió antes de ser resuelto en sus méritos por la corte. Más tarde entabló la demanda del recurso que está ante nos. En ella solicita se dicte sentencia condenando al municipio demandado a pagarle los indicados $12,484.63, con intereses al tipo legal desde noviembre 4 de 1933 hasta su total pago; o, en la alternativa, estableciendo la existencia de un gravamen (*lien*) a su favor sobre la referida planta de filtración por la indicada suma, con intereses; o decretando el reconocimiento por dicho municipio de un condominio por la mencionada cantidad, con intereses, a favor de la demandante en la aludida planta de filtración; o concediéndole cualquier otro remedio apropiado, con costas y honorarios de abogado.

Visto el caso en sus méritos y luego de aducirse por ambas partes extensa prueba testifical y documental, la Corte de Distrito de Caguas declaró sin lugar la demanda, con costas a la demandante. El nervio de la decisión fué que como el contratista no exigió dentro del término de un mes que se le pagara por el trabajo extra realizado, su reclamación estaba

prescrita y, por ende, igualmente prescrito el derecho de la demandante. De la sentencia así dictada apeló ésta para ante nos.

▮ Insiste la apelante en que la corte inferior erró al resolver que como el contratista no exigió el pago del trabajo extra dentro del término de un mes, el derecho de la demandante a reclamarlo había prescrito.

La cláusula 6 del contrato celebrado por Prann y el Municipio de Caguas el 3 de febrero de 1931 provee "Que las Condiciones Generales para la Contratación de Obras Públicas Insulares puestas en vigor desde el mes de julio de 1902, son aplicables a este contrato y forman parte del mismo." Y la sección 30 de las indicadas Condiciones Generales, traducida al castellano, reza así:(¹)

---

(¹)Las Condiciones Generales están redactadas en el idioma inglés, y la sección 30 de las mismas en dicho idioma se lee así:

## "EXTRA WORK"

"Any alteration or changes in the project producing work not provided for in the contract shall be considered as extra work.

"No claim for extra work shall be allowed unless such work shall have been previously ordered in writing by the local engineer with the approval of the Superintendent of Public Works, and an agreement upon the prices to be paid for such extra work has been reached between the engineer and the contractor and such prices duly approved.

"The claims for extra work, when it is ordered, shall be presented and paid in the next monthly estimate for extra work, otherwise said claims shall be forfeited and waived.

"Alterations or changes in the details of the work not entailing new prices shall not be considered as extra work, and the contractor will be required to perform such alterations or changes under the direction of the local engineer at the prices named in the Contract; *Provided, however,* That said alterations and changes do not increase the quantities over 20 per cent of the original estimate. For all work in excess of 20 per cent of the original quantities caused by such alterations and changes, the Bureau of Public Works reserves the right to enter into a written agreement with the contractor to execute such additional work upon prices mutually agreed upon, or to have the same carried out by day labor or by any other method it may direct. Should, however, any alterations or changes in the work produce a diminution in the original cost or quantities not reaching 20 per cent, the reduction thus made shall not constitute a claim for damages by the contractor or for profits supposed to be lost by him on the work that may be altered or dispensed with."

## "Trabajo Extra"

"Cualesquiera alteración o modificaciones en el proyecto, que ocasionen trabajo no provisto en el contrato, serán consideradas como trabajo extra.

"No se concederá ninguna reclamación por trabajo extra a menos que tal trabajo haya sido previamente ordenado por escrito por el ingeniero local con la aprobación del Superintendente de Obras Públicas, y que sobre los precios a ser pagados por tal trabajo extra se haya llegado a un acuerdo entre el ingeniero y el contratista y que tales precios hayan sido debidamente aprobados.

*Las reclamaciones por trabajo extra, al ser éste ordenado, serán presentadas y pagadas en la próxima cuenta (estimate) mensual por trabajo extra; de lo contrario dichas reclamaciones serán perdidas por incumplimiento (forfeited) y renunciadas.*

"Las alteraciones o modificaciones en los detalles del trabajo que no envuelvan nuevos precios no serán consideradas como trabajo extra, y el contratista deberá realizar tales alteraciones o modificaciones bajo la dirección del ingeniero local a los precios fijados en el contrato; *Disponiéndose, sin embargo,* que dichas alteraciones y modificaciones no aumentarán las cantidades en exceso del 20 por ciento de los cálculos originales. Para todo trabajo en exceso del 20 por ciento de las cantidades originales ocasionado por tales alteraciones y modificaciones, el Negociado de Obras Públicas se reserva el derecho de celebrar un contrato escrito con el contratista para la ejecución de tal trabajo adicional a los precios que mutuamente se convengan o a realizar el mismo por día o en cualquiera otra forma que el Negociado así lo ordene. Empero, si cualesquiera alteraciones o modificaciones en el trabajo producen alguna disminución en el costo original o en las cantidades a ser utilizadas que no alcance al 20 por ciento, la reducción así efectuada no dará derecho al contratista a hacer una reclamación de daños y perjuicios por las ganancias dejadas de percibir con motivo de las alteraciones o del trabajo no ejecutado." (Bastardillas nuestras.)

Nada hay en los autos que demuestre que el contratista Prann presentara su reclamación al Municipio en la próxima cuenta mensual por trabajo extra, tal cual exige la referida sección 30. En ausencia de prueba a ese efecto, dicha reclamación, de acuerdo con los propios términos de la mencio-

nada sección, debe considerarse como perdida por incumplimiento y como renunciada. El primer error no ha sido cometido.

■ Sostiene en segundo término la demandante que ''En el supuesto de que se estimara aplicable el período prescriptivo estipulado,'' la corte inferior erró ''al no limitar sus efectos a la suma que resultara en exceso del veinte (20) por ciento del importe del contrato.''

No tiene razón la demandante. Es cierto que en el Pliego de Instrucciones y Condiciones Generales suministrado a todas aquellas personas que concurrieron a la subasta anunciada por el Municipio de Caguas en relación con las mejoras que iban a realizarse en su acueducto, aparece bajo el núm. 26 la condición siguiente:

''  . . . Toda obra en exceso del veinte (20) por ciento, del importe de dicho contrato será tratada de acuerdo con la sección 30 del Pliego de Condiciones Generales para la contratación de obras públicas insulares.''

Igualmente es cierto que según el párrafo 20 de las mismas, dichas instrucciones forman parte del contrato. Pero por la discusión que hemos hecho del primer error señalado, ya hemos visto cómo reza la sección 30 de las Condiciones Generales y que en ningún sitio de ella se dice específicamente que cuando el trabajo extra exceda del 20 por ciento el contratista tendrá derecho a cobrar el 20 por ciento del mismo, aunque no haya hecho su reclamación dentro del mes siguiente. Al referirse el párrafo 26 de las instrucciones a la sección 30 del Pliego de Condiciones Generales el propósito ha sido sin duda recalcar el hecho de que en relación con todo trabajo en exceso del 20 por ciento de las cantidades originales, el Negociado de Obras Públicas se reservaba el derecho de celebrar un contrato escrito con el contratista, mas no crear una excepción para el cobro del 20 por ciento cuando el trabajo extra realizado excede de ese tanto por ciento.

Las partes admiten que el trabajo extra se realizó y que el mismo fué debidamente certificado por el funcionario municipal correspondiente y por el Comisionado del Interior. No obstante, en ausencia de prueba al efecto de que la reclamación por la totalidad del trabajo extra realizado se hizo oportunamente, se ha perdido y renunciado todo derecho a reclamar tanto el 20 por ciento del exceso como su totalidad.

El tercer error señalado es al efecto de que "En el supuesto de que el período de un mes estipulado para la reclamación de obra extra en exceso del veinte por ciento del importe del contrato afecte el derecho de la demandante, erró la Corte de Distrito de Caguas al aplicar la Regla al montante de $4,575.33 representativo del diez por ciento retenido al Sr. Prann como garantía del fiel cumplimiento del contrato."

De acuerdo con el párrafo 9 del contrato celebrado entre Prann y el municipio "Se harán pagos mensuales al contratista durante el progreso de las obras en proporción al material suministrado y mano de obra ejecutada durante el mes con cargo a este contrato, *reteniéndose el diez (10) por ciento de cada pago hasta la terminación total de las obras y su aceptación final,* y siempre que se haya cumplido con todos los requisitos según está previsto en el Pliego de Condiciones Generales." (Bastardillas nuestras.) En armonía con lo convenido, el municipio retuvo siempre el 10 por ciento de las cantidades que pagaba. Si el 10 por ciento así retenido estuviera aún en poder del municipio, asistiría la razón a la demandante. Pero dicho 10 por ciento fué entregado por el municipio al propio contratista en 10 de mayo de 1932, de conformidad con un contrato celebrado por ellos en esa fecha. Se hizo constar en el aludido contrato que el Municipio de Caguas tenía en su poder por concepto de la retención del 10 por ciento de las cantidades pagadas la suma de $3,287.01; que el municipio estaba adeudando a Prann por concepto de obras ejecutadas y no pagadas la cantidad

de $3,278.56 y que no contando el municipio con otros fondos para hacer tal pago y habiéndose comprometido Prann a garantizarle el fiel cumplimiento del contrato con otras cantidades que el municipio estaba adeudándole, éste convenía en pagar y pagaba a Prann la suma de $3,278.56 de los $3,287.01 que tenía entonces en su poder procedente del tanto por ciento retenido de las cantidades pagadas por obras ejecutadas. Así pues, lo que en realidad se hizo fué entregar casi la totalidad de la suma retenida por concepto del diez por ciento del contrato y recibir en garantía un certificado de crédito expedido por trabajo extra realizado. Habiéndose desprendido el municipio de la suma retenida y conservado en su poder un certificado que tan sólo formaba parte del total reclamádole, actuó acertadamente la corte a quo al no ordenar el pago del importe total de dicho diez por ciento.

■ Finalmente alega la demandante que la corte inferior erró al desestimar la demanda y al no concederle algún remedio. La demandante, como se ha visto, es cesionaria del Banco Territorial y Agrícola de Puerto Rico y éste a su vez era cesionario del contratista Prann. Cuando se efectuó la cesión de Prann al Banco Territorial y Agrícola ya Prann había perdido y renunciado todo derecho a reclamar del municipio dicha cantidad por no haber presentado su reclamación dentro del mes fijado en las Condiciones Generales. Si para aquel entonces Prann no tenía derechos de clase alguna contra el municipio, la cesión que se hizo al Banco Territorial y Agrícola no revivió el derecho a reclamar contra el municipio. Tampoco lo revivió el traspaso que unos diez años más tarde se hizo de dicho crédito a la aquí demandante. En su consecuencia, ésta nada adquirió y a ningún remedio tiene derecho.

■■ Por otra parte, en la demanda no se alega la existencia de fondos en presupuesto para hacer frente a la suma

reclamada y, además, la prueba demuestra que a la fecha en que Prann terminó y entregó la planta de filtración la partida .de $80,000 asignada para las mejoras del acueducto ya estaba agotada y que en los presupuestos posteriores jamás se ha asignado cantidad alguna para el pago del crédito reclamado.([2]) Ese motivo sería de por sí suficiente para desestimar la demanda en lo que al cobro de los $12,484.63 concierne. *De la Cruz* v. *Gobierno de la Capital,* 68 D.P.R. 534, 545. Empero, hemos preferido no desestimarla por ese fundamento debido a que en los errores señalados se insistía en que la demandante tenía derecho a recibir por lo menos el monto del diez por ciento retenido por el municipio y en la súplica de la demanda se pedían remedios alternativos. Sobre el diez por ciento retenido ya hemos hablado en el curso de esta opinión. Respecto a los remedios alternativos diremos que como un contrato celebrado con un municipio en violación del artículo 8(9) de la Ley núm. 53 de 1928 (pág. 334)—preceptivo de que "no se podrá incurrir en obligación o deudas fuera de los créditos asignados en presupuesto"—resulta nulo y sin valor alguno, no es posible conceder ninguno de los remedios alternativos solicitados por la demandante, puesto que ello equivaldría a permitir indirectamente aquello que está prohibido hacerse directamente. El reconocimiento de cualquiera de los remedios alternativos pedidos equivaldría a convertir en letra muerta los propósitos del estatuto. Véase McQuillin, *Municipal Corporations,* Segunda Edición, revisada en 1943, volumen 3, sección 1266, págs. 1088–1091, y casos allí citados.

*Debe confirmarse la sentencia apelada.*

---

([2])Hay en los autos una estipulación de las partes a ese efecto.